TEXAS DEPARTMENT OF PUBLIC
SAFETY, Appellant

v.

Sheatri LITTLE, Appellee.

No. 14–07–00840–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

May 29, 2008.

Michael P. Murphy, Austin, for appellants.

Toni M. Triplett, Houston, for appellees.

Panel consists of Justices FOWLER, SEYMORE, and GUZMAN.

## OPINION

EVA M. GUZMAN, Justice.

In this accelerated interlocutory appeal, the Texas Department of Public Safety challenges the trial court's denial of its assertions of governmental immunity. Appellee Sheatri Little alleges that she was injured when the Department's employee, Trooper Sean Cheshire, negligently drove

his patrol car into the vehicle in which Little was a passenger. Because the Department produced conclusive evidence that Cheshire was responding to an emergency call at the time of the accident and Little does not contend that Cheshire failed to comply with applicable law, we reverse and render judgment dismissing the suit.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Although the parties dispute the legal implications of the facts in this case, the facts themselves are uncontroverted. Trooper Cheshire was dining with three other troopers on the evening of August 23, 2003, when he received a dispatch call to respond to a "10–99." This code signified that an officer requested assistance with a wanted person.[1] Cheshire testified without contradiction that law enforcement officers consider such a request to be an emergency.

In response to the call, Cheshire left the other troopers and began driving south to the location identified by the dispatcher. Cheshire may have been traveling five or ten miles over the speed limit, and he did not use the vehicle's siren. He testified that he activated his emergency lights to cross an intersection and a railroad crossing, then deactivated the lights.

After he had been driving for three or four minutes, Cheshire slowed the vehicle as he attempted to contact the dispatcher using a cellular telephone. As he stated in a memorandum to his superior officer, Cheshire wanted to contact the dispatcher regarding "the urgency of the call, due to the fact that [he] was the only DPS unit dispatched." While he was looking at the

telephone, Cheshire inadvertently allowed his vehicle to cross the opposing lane of traffic and enter the shoulder of the northbound lane. While attempting to reenter the roadway, Cheshire lost control of the vehicle and collided with a northbound vehicle in which Little was a passenger. Cheshire testified that he saw no other traffic prior to the accident. He admits he "was inattentive to the roadway conditions."

Two years after the accident, Little filed suit, alleging that the Department is liable because her injuries were proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment in operating a motor vehicle. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1) (Vernon 2005). She does not allege that Cheshire was reckless or that his actions did not comply with applicable law. The Department included a plea to the jurisdiction in its answer, and more than five months later, Little amended her petition. The Department reasserted its plea to the jurisdiction and moved for summary judgment. The trial court denied both and this accelerated interlocutory appeal timely followed.

## II. ISSUES PRESENTED

In two issues, the Department challenges the trial court's denial of its plea to the jurisdiction and its motion for summary judgment.

## III. ANALYSIS

### A. Plea to the Jurisdiction

 In a suit against a governmental unit, the plaintiff must affirmatively dem-

---

1. Cheshire testified, "A 10–99 subject is a wanted person. And when an officer is asking for assistance with a 10–99 subject, it is considered by law enforcement officers as an emergency call similar to an officer down." Corporal Victor Gails also testified, "Our dispatcher called Trooper Cheshire to go assist a game warden who was out on a wanted person."

onstrate the trial court's jurisdiction by alleging a valid waiver of immunity. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex.2003). To determine if the plaintiff has met that burden, "we consider the facts alleged by the plaintiff and, to the extent it is relevant to the jurisdictional issue, the evidence submitted by the parties." *Id.* (quoting *Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex.2001)). We review de novo a trial court's ruling on a jurisdictional plea, construing the pleadings in the plaintiff's favor and looking to the pleader's intent. *Tex. Dep't of Pub. Safety v. Grisham*, 232 S.W.3d 822, 824–25 (Tex. App.-Houston [14th Dist.] 2007, no pet.).

### 1. Burden of Proof

█ The Department moved to dismiss on the grounds that "its sovereign immunity has not been waived under the Tort Claims Act pursuant to TEX. CIV. PRAC. & REM.CODE ANN. § 101.055(2) (Vernon 2005)." This provision is an exception to the waiver of sovereign immunity under the Act, and applies to claims against a governmental unit arising:

> from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others....

*Id.* This is sometimes referred to as the "emergency exception" to the Tort Claims Act.[2] Little responds that the City must prove that sovereign immunity was not waived by producing evidence that Cheshire acted in compliance with applicable law and was actually responding to an emergency call.

A recent Texas Supreme Court case clarifies the burden of proof under the "emergency exception." *See City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 (Tex.2006). The *Hartman* case arose from "a rainstorm of historic proportions" during which the City of San Antonio was declared a disaster area. *Id.* at 669. The City placed barricades at locations throughout the city to warn motorists of flooded roadways. *Id.* At least one barricade faced west on Rigsby Avenue near a creek crossing; nevertheless, a vehicle carrying four members of the Hartman family was driven into the flooded roadway and swept away. *Id.* All four occupants drowned, and their survivors sued the City. *Id.* In response, the City asserted the emergency exception to the Tort Claims Act. *Id.*

The Texas Supreme Court explained the interaction between the plaintiff's pleadings and the burden of proof on the plea to the jurisdiction:

> The Hartmans do not assert that any law or ordinance governed the placement of barricades on Rigsby Avenue. Nor do they assert that the City's acts or omissions show that it did not care what happened to motorists. Accordingly, this exception to the Tort Claims Act applies unless the Hartmans presented some evidence that City employees were not reacting to an emergency situation.

*Id.* at 672. As in *Hartman*, the plaintiff in this case "[does] not assert that any law or ordinance governed" the actions of the government official-here, Trooper Che-

**2.** *See, e.g., Pakdimounivong v. City of Arlington*, 219 S.W.3d 401, 410 (Tex.App.-Fort Worth 2006, pet. denied); *Durham v. Bowie County*, 135 S.W.3d 294, 297–98 (Tex.App.-Texarkana 2004, pet. denied); *Borrego v. City of El Paso*, 964 S.W.2d 954, 957–58 (Tex. App.-El Paso 1998, pet. denied).

shire. *See id.* And as in *Hartman,* the plaintiff in the present case does not "assert that the [government]'s acts or omissions show that it did not care what happened to motorists." *See id.* Thus, the emergency exception to the Tort Claims Act applies unless Little presented some evidence that Cheshire was not reacting to an emergency situation or responding to an emergency call. *See id.* In sum, *Hartman* places the burden on the plaintiff to produce sufficient evidence to raise a fact issue concerning whether the government employee was responding to an emergency.

### 2. Jurisdictional Evidence

Here, Little attempts to meet her burden by relying on the fact that Cheshire had reduced his speed and was not using the patrol car's emergency lights or sirens at the time of the accident. But as previously noted, she does not assert that his actions violated any laws, ordinances, or policies. And in the absence of such factors, the use of emergency lights or sirens is discretionary. *See* TEX. TRANSP. CODE ANN. §§ 546.003, 546.004 (Vernon 1999).

Little also argues that at the time of the accident, Cheshire did not subjectively believe that he was responding to an emergency situation, or he doubted the emergency nature of the call. In support of this position, Little relies on Cheshire's memorandum to his superior officer[3] and on his deposition testimony:

Q: At the time that this incident occurred, you were questioning in your mind as to whether or not this was truly an emergency call, were you not?

A: I was—at the time I was trying to find out to ensure that it was an emergency call to negate the need for an emergency response.

According to Cheshire's uncontroverted testimony, several units are usually dispatched in response to a "10–99," but to his knowledge, he was the only trooper who was asked to respond in this instance. Thus, he attempted to telephone the dispatcher for clarification or confirmation.

Cheshire's attempt to gather more information does not change the fact that he actually received a "10–99," which is an emergency call. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.055(2) (Vernon 2005) (governing immunity for claims arising from a governmental employee's actions while "responding to an emergency *call,*" as well as the employee's reactions to an "emergency situation") (emphasis added). At the time of the accident, Cheshire was continuing to respond to the emergency call by driving to the location identified by the dispatcher.

Finally, Little points out that the dispatcher miscoded the call. In fact, the dispatcher should have identified the request as a "10–66," indicating that an officer requested assistance with a Department warrant. According to Cheshire, the majority of such warrants are traffic citations and could be non-emergencies. It is undisputed, however, that Cheshire did not learn of the dispatcher's error until after the accident. Thus, he was responding to an "emergency call," even though the call did not correspond to the "emergency situation" it purported to identify.

In sum, the evidence produced by the Department in support of its plea to the jurisdiction conclusively establishes that Cheshire was responding to an emergency call at the time of the accident, while none

---

**3.** As discussed *supra* at 237, Cheshire stated that he wanted to contact the dispatcher regarding "the urgency of the call, due to the fact that [he] was the only DPS unit dispatched."

240

of the evidence on which Little relies controverts that evidence or otherwise raises a genuine issue of material fact. We therefore reverse the trial court's order denying the Department's plea to the jurisdiction and dismiss the case for want of jurisdiction. In light of our disposition of this issue, we do not reach the Department's challenge to the trial court's denial of its motion for summary judgment.

## IV. Conclusion

Because the Department established its entitlement to governmental immunity, we reverse the judgment of the trial court and dismiss the case for want of jurisdiction.