

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-17-00572-CV

**CITY OF SAN ANTONIO** by and through City Public Service Board of San Antonio
d/b/a CPS Energy,
Appellant

v.

Chris **SMITH**,
Appellee

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2015-CI-08496
The Honorable Renée Yanta, Judge Presiding

Opinion by:    Karen Angelini, Justice
Dissenting Opinion by:  Irene Rios, Justice

Sitting:       Karen Angelini, Justice
               Patricia O. Alvarez, Justice
               Irene Rios, Justice

Delivered and Filed:  August 22, 2018

REVERSED AND RENDERED

The City of San Antonio by and through City Public Service Board of San Antonio d/b/a

CPS Energy appeals the trial court's order denying, in part, its plea to the jurisdiction based on

governmental immunity. We reverse and render.

## BACKGROUND

The City of San Antonio by and through City Public Service Board d/b/a CPS Energy

(hereinafter, "CPS Energy") was sued by Christopher Smith for damages he sustained in a

motorcycle accident. In his petition, Smith alleged that he was driving his motorcycle on an exit ramp from Interstate Highway 10 to Interstate Highway 37 when he struck a light pole that had fallen onto the roadway. Smith also alleged that he was unable to avoid the light pole and was thrown from his motorcycle and sustained serious injuries. According to Smith's petition, the downed light pole created a driving hazard and CPS Energy was negligent in failing to timely remove the light pole blocking the roadway and in failing to warn him of the light pole blocking the roadway. Smith asserted negligent activity, premises liability, and gross negligence claims against CPS Energy.

CPS Energy filed a plea to the jurisdiction and a supplemental plea to the jurisdiction (collectively, "the plea to the jurisdiction"), asserting that it was entitled to governmental immunity because the Texas Tort Claim Act's ("TTCA's") waiver of immunity did not apply. Specifically, CPS Energy argued Smith's claims did not fall within the limited waiver of immunity provided by section 101.021 of the TTCA. Additionally, CPS Energy argued that even if Smith had alleged facts that brought his claims within section 101.021's limited waiver of immunity, his claims were barred by statutory exceptions for emergencies provided under sections 101.055(2) and 101.062(b) of the TTCA. Finally, CPS Energy argued that it was immune from suit under section 101.056 of the TTCA because any act on its part regarding the downed light pole was a discretionary act for which the Legislature had not expressly waived immunity.

In his response to the plea to the jurisdiction, Smith argued that CPS Energy shared with the City of San Antonio responsibility for the maintenance and removal of downed light poles in emergency situations under a joint enterprise theory; that CPS Energy and the City's light pole maintenance was a proprietary function that was not protected by immunity; that CPS Energy was not protected by immunity because immunity does not extend to private companies exercising

independent discretion; and that even if immunity did apply, it would be waived because the light pole obstructing the roadway was a special defect under the TTCA.

After a hearing, the trial court granted CPS Energy's plea to the jurisdiction as to Smith's negligent activity claims, but denied its plea to the jurisdiction as to Smith's premises liability and gross negligence claims. CPS Energy appealed.

## DISCUSSION

The only part of the trial court's ruling challenged on appeal is the denial of CPS Energy's plea to the jurisdiction as to Smith's premises liability and gross negligence claims. Thus, our review is limited to this part of the trial court's ruling.

### *Appellate Standard of Review*

Whether the trial court had subject-matter jurisdiction over Smith's claims is a question of law that we review de novo. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *City of San Antonio v. Cervantes*, 521 S.W.3d 390, 394 (Tex. App.—San Antonio 2017, no pet.). Our ultimate inquiry is whether the particular facts presented affirmatively demonstrate a claim within the trial court's subject-matter jurisdiction. *Bacon v. Texas Historical Comm'n*, 411 S.W.3d 161, 171 (Tex. App.—Austin 2013, no pet.).

### *Governmental Immunity*

Under the common-law doctrine of sovereign immunity, the sovereign cannot be sued without its consent. *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011). "Governmental immunity operates like sovereign immunity to afford similar protection to subdivisions of the State, including counties, cities, and school districts." *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). The Texas Supreme Court has explained that "[t]he City of San Antonio acts by and through CPS Energy, so CPS Energy is treated as a municipality" for purposes of the TTCA.

*Wheelabrator Air Pollution Control, Inc. v. City of San Antonio*, 489 S.W.3d 448, 450 n.1 (Tex. 2016).

A party suing a governmental entity must establish the state's consent, which may be alleged either by reference to a statute or to express legislative permission. *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). Absent the state's consent to suit, a trial court lacks subject-matter jurisdiction. *Id*. Section 101.021 of the TTCA provides a limited waiver of immunity if certain conditions are met. TEX. CIV. PRAC. & REM. CODE ANN. 101.021 (West 2011). Section 101.021 has been interpreted to waive immunity in three general areas: use of publicly owned automobiles, premises defects, and injuries arising out of conditions or use of property. *Texas Dep't of Transp. v. Able*, 35 S.W.3d 608, 611 (Tex. 2000).

### *Application of Governmental Immunity*

We first address Smith's argument that governmental immunity does not apply here because the activities that form the basis of his claims were proprietary in nature. A governmental entity like CPS Energy does not have immunity when it engages in a proprietary function. *Wheelabrator*, 489 S.W.3d at 451. A municipality's operation of its own public utility is a propriety function. *Id*. at 452. However, the fact that CPS Energy primarily functions as a public utility does not prevent it from performing activities that are governmental in nature. *See City of San Antonio v. BSR Water Co.*, 190 S.W.3d 747, 753 (Tex. App.—San Antonio 2005, no pet.); *City of San Antonio v. Butler*, 131 S.W.3d 170, 177-78 (Tex. App.—San Antonio 2004, pet. denied). In section 101.0215 of the TTCA, the legislature provided a nonexclusive list of activities by a municipality that are categorized as governmental in nature. TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a) (West Supp. 2017). "Although the operation of a public utility is a proprietary function, a municipality's proprietary functions do not include those activities listed as governmental in section 101.0215(a)." *BSR Water Co.*, 190 S.W.3d at 753. "This court has held

that all activities associated with the operation of one of the governmental functions listed in section 101.0215(a) are governmental and cannot be considered proprietary regardless of the city's motive for engaging in the activity." *Butler*, 131 S.W.3d at 177-78.

The activities listed in section 101.0215(a) include "regulation of traffic" and "maintenance of traffic signals, signs, and hazards." TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215 (21), (31) (West Supp. 2017). In his petition, Smith alleged a light pole fell on the roadway and created a driving hazard. Smith further alleged that CPS Energy was negligent in failing to timely remove the light pole blocking the roadway and in failing to warn him of the light pole blocking the roadway. The activities that form the basis of Smith's claims involve CPS Energy's response to a traffic hazard either by removing the hazard from the roadway or by warning drivers of the hazard. We conclude that these activities qualify as governmental functions. *See Ethio Exp. Shuttle Serv., Inc. v. City of Houston*, 164 S.W.3d 751, 756 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (holding city's activities were governmental in nature when they were well-aligned with functions the legislature had designated as governmental in section 101.0215(a)). Therefore, we reject Smith's argument that governmental immunity does not apply here because the activities that form the basis of his claims were proprietary in nature.

### Plea to the Jurisdiction

Because immunity from suit defeats a trial court's subject-matter jurisdiction, it may be raised in a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 225-26. A plaintiff bears the burden of affirmatively demonstrating a trial court's jurisdiction. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012); *Cervantes*, 521 S.W.3d at 394. "[A] court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000).

When a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court considers the relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *Univ. of Texas v. Poindexter*, 306 S.W.3d 798, 806 (Tex. App.—Austin 2009, no pet.). "Such cases fall into two categories: (1) those in which the jurisdictional issue or facts do not substantially implicate the merits of the plaintiff's case, but rather are, for the most part, separate and distinct from the merits; and (2) those in which the jurisdictional issue or facts do implicate the merits of the plaintiff's case." *Id*. "Courts treat these two categories of cases in markedly different ways." *Id*. A jurisdictional issue implicates the merits of a case when the determination of many, if not most, of the challenged jurisdictional facts will also determine whether the plaintiff is entitled to relief on the merits. *Id*. at 807.

The first category, cases in which the jurisdictional issue or facts *do not* implicate the merits of the plaintiff's case, contains two types of cases: (1) cases in which the relevant jurisdictional facts are disputed, and (2) cases in which the relevant jurisdictional facts are undisputed. *See id*. at 806. When the relevant jurisdictional facts are disputed, the trial court—not the jury—makes the necessary fact findings to resolve the jurisdictional issue. *Id*. (citing *Miranda*, 133 S.W.3d at 226); *Cervantes*, 521 S.W.3d at 394. Stated another way, "[w]hen a jurisdictional issue is not intertwined with the merits of the claims . . . disputed fact issues are resolved by the court, not the jury." *Vernco Constr., Inc. v. Nelson*, 460 S.W.3d 145, 149 (Tex. 2015). However, when the relevant jurisdictional facts are undisputed, the trial court makes the jurisdictional determination as a matter of law based solely on those undisputed jurisdictional facts. *Poindexter*, 306 S.W.3d at 806.

As to the second category, cases in which the jurisdictional issue or facts *do* implicate the merits of the plaintiff's case, the trial court does not act as a factfinder. *Id*. at 807. Instead, the defendant is put to a burden very similar to that of a summary judgment movant. *Id*. If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea

to the jurisdiction and the fact issue will be resolved by the factfinder at trial. *Id*. (citing *Miranda*, 133 S.W.3d at 227-28). However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Poindexter*, 306 S.W.3d at 806 (citing *Miranda*, 133 S.W.3d at 227-28). As with a summary judgment, the trial court's determination in such a case is a purely legal one. *Id*. (citing *Miranda*, 133 S.W.3d at 228). Furthermore, the appellate court reviews the trial court's determination de novo, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Id*. (citing *Miranda*, 133 S.W.3d at 228).

As will be discussed in more detail below, the relevant jurisdictional facts in this case do not implicate the merits of Smith's claims and are undisputed. Therefore, the trial court was required to make the jurisdictional determination as a matter of law based solely on those undisputed jurisdictional facts. *See Poindexter*, 306 S.W.3d at 806.

### *The "Emergency Exception" under Section 101.055(2)*

We next address CPS Energy's argument that the trial court erred in denying its plea to the jurisdiction because, even if immunity was waived under the TTCA, the undisputed evidence established that the "emergency exception" to any waiver of immunity barred Smith's claims.[1]

The TTCA waives immunity from suit in a number of circumstances. *City of San Antonio v. Hartman*, 201 S.W.3d 667, 671-72 (Tex. 2006). The TTCA also includes a subchapter entitled "Exceptions and Exclusions," which lists circumstances in which its waiver provisions do not apply. *Id*. One section in this subchapter, section 101.055(2), excludes any waiver of immunity for

> a claim arising . . . from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others . . . .

---

[1]For purposes of analyzing this appeal, we will assume, without deciding, that immunity was waived under the TTCA.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.055(2) (West 2011). Thus, under section 101.055(2), commonly called the "emergency exception," immunity is not waived for a claim arising from the action of an employee while responding to an emergency call or reacting to an emergency situation, if the action was in compliance with the laws and ordinances applicable to the situation. *Id.* If no law or ordinance is applicable to the situation, then the "emergency exception" will apply if the employee's action was not taken with conscious indifference or reckless disregard for the safety of others. *Id*.

The statute does not define the terms "emergency call" or "emergency situation," but the Texas Supreme Court has interpreted the term "emergency" broadly. *See Hartman*, 201 S.W.3d at 672-73 (concluding that section 101.055(2) applied to suit involving the city's reaction to roadway flooding). As the Texas Supreme Court stated in *Hartman*: "[B]ecause the [TTCA] creates liability where it would not otherwise exist, we cannot construe section 101.055(2) to exclude emergencies the Legislature might have intended to include." *Id*. at 673. "While the statute certainly has been applied to traffic accidents, it also has been applied in other circumstances…." *Id*. at 672-73. Additionally, Texas appellate courts have concluded that claims arising from objects blocking lanes on highways were emergency situations, and the actions of government employees in response to these emergency situations fell within the scope of section 101.055(2). *See City of College Station v. Kahlden*, No. 10-12-00262-CV, 2014 WL 1269026, at \*5-6 (Tex. App.—Waco 2014, pet. denied) (holding that an officer who stopped to remove debris from the roadway was reacting to an emergency situation under section 101.055(2)); *City of El Paso v. Segura*, No. 08-02-00240-CV, 2003 WL 1090661, at \*1-3 (Tex. App.—El Paso 2003, pet. denied) (recognizing that actions of city employees who arrived on the scene where light generator was blocking two lanes of traffic fell within the scope of section 101.055(2)).

In *Hartman*, the Texas Supreme Court explained the interaction between the plaintiff's pleadings and the burden of proof when determining if the emergency exception applies. *Texas Dep't of Public Safety v. Little*, 259 S.W.3d 236, 238 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Once the governmental entity asserts and presents evidence to support the application of the "emergency exception" under section 101.055(2), the plaintiff has the burden to plead and prove that the emergency exception does not apply. *See Hartman*, 201 S.W.3d at 672; *Quested v. City of Houston*, 440 S.W.3d 275, 284 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *City of San Antonio v. Rosenbaum*, No. 04-11-00498-CV, 2011 WL 6739583, at *2 (Tex. App.—San Antonio 2011, no pet.) ("Once the City asserted the two emergency exceptions, the [plaintiffs] had the burden to plead and prove that the actions taken by [the city employee] violated a law or ordinance in order for immunity to be waived under these emergency exceptions…. Alternatively, the [plaintiffs] would be required to present some evidence showing that [the city employee] was not reacting to an emergency situation or responding to a 9-1-1 emergency call."); *Little*, 259 S.W.3d at 238-39. To do so, the plaintiff has the burden to plead and present evidence of at least one of the following: (1) the entity was not responding to an emergency call or reacting to an emergency situation; (2) the entity was not in compliance with the laws and ordinances applicable to the emergency action; or (3) the entity's actions were taken with conscious indifference or reckless disregard for the safety of others. *See Hartman*, 201 S.W.3d at 672; *Quested*, 440 S.W.3d at 284; *Rosenbaum*, 2011 WL 6739583, at *2; *Little*, 259 S.W.3d at 238-39.

- *Application of the Law to the Present Case*

We believe the jurisdictional issue in this case did not implicate the merits of Smith's claims because the determination of the relevant jurisdictional facts—whether CPS Energy was responding to an emergency call or reacting to an emergency situation—would not determine whether Smith was entitled to recover on his premises liability and gross negligence claims. *See*

*Poindexter*, 306 S.W.3d at 807-08 (noting that a jurisdictional issue implicates the merits of a case when the determination of many, if not most, of the challenged jurisdictional facts will also determine whether the plaintiff is entitled to relief on the merits). Thus, the trial court was required to consider the relevant evidence and resolve the jurisdictional issue based either on the facts it found or those that were undisputed. *See Cervantes*, 521 S.W.3d at 394. In this case, the relevant jurisdictional facts were undisputed. Therefore, the trial court was required to make the jurisdictional determination as a matter of law based solely on those undisputed jurisdictional facts. *See Poindexter*, 306 S.W.3d at 806.

In this case, Smith alleged in his petition that a light pole fell on the roadway and created a driving hazard. Smith further alleged that CPS Energy was negligent in failing to timely remove the light pole blocking the roadway and in failing to warn him of the light pole blocking the roadway. In its plea to the jurisdiction, CPS Energy contended that Smith's claims regarding its failures to report, warn, remove, or make safe the roadway after the light pole was struck and knocked down by another driver constituted complaints about the manner in which it responded to an emergency call or reacted to an emergency situation and fell within the scope of section 101.055(2) of the TTCA. CPS Energy presented evidence to support its contention that section 101.055(2) applied. Smith, however, did not file any pleadings asserting that the emergency exception did not apply.

The evidence before the trial court included the undisputed testimony of Jose Guadalupe Trevino, CPS Energy's Director of Construction and Maintenance. In his deposition testimony, Trevino testified that CPS Energy employs first responders called "troublemen." CPS Energy's troublemen are dispatched to emergencies throughout the city. According to Trevino, a downed light pole blocking a lane of highway at an interchange would be considered an emergency once it was reported to CPS Energy. Once a downed light pole is reported to CPS Energy, it dispatches

a troubleman to patrol the area to find it. If a troubleman arrives at the scene of a downed light pole and decides that it is too dangerous to get the pole out of the road on his own, he will try to set up cones or at least alert drivers to the downed pole so they will be more cautious. And, if CPS Energy's troubleman cannot remove the downed pole himself, he will call for assistance from the police department or a crew to help him get the downed pole out of the way.

In his affidavit, Trevino testified CPS Energy's dispatch records and audio recordings showed that at about 3:49 p.m. on the day of Smith's accident, CPS Energy received a call from the San Antonio Police Department ("SAPD") stating that a light pole had been knocked down and was in the middle of the highway. The caller specified that the downed light pole was located at Eastbound IH-10 and Pine. CPS Energy dispatched a troubleman to look for the downed light pole located at Eastbound IH-10 and Pine. At approximately 4:26 p.m., the troubleman contacted the dispatcher and advised that he had "been from Hackberry all the way to Walters on both sides of 10" and was "not seeing anything." At approximately 4:27 p.m., CPS Energy's dispatcher called SAPD to request clarification about the downed light pole and was told that the light pole was actually located at Eastbound 10 to Northbound 37 and that the police had already left the scene.

Other undisputed evidence showed the downed light pole near Pine Street and IH-10 was not the one struck by Smith. Smith's accident occurred at approximately 4:46 p.m. when he struck the downed light pole located at Eastbound 10 to Northbound 37. Thus, the evidence showed that on the afternoon of Smith's accident CPS Energy was informed of two downed light poles located in the same vicinity.

In sum, the undisputed evidence showed that CPS Energy considered a downed light pole blocking the roadway to be an emergency and it employed first responders, troublemen, who responded to this type of emergency. The undisputed evidence also showed that on the day of Smith's accident CPS Energy was notified of a downed light pole in the middle of the highway

- 11 -

near Pine Street and IH-10 and it responded by sending a troubleman to locate the downed light pole. When the troubleman was unable to locate the downed light pole, he contacted the dispatcher who sought clarification of the location of the downed light pole. At this point, the dispatcher was informed of another downed light pole, the downed light pole involved in Smith's accident. We conclude that the evidence established that Smith's claims arose from CPS Energy's response to an emergency call or reaction to an emergency situation.

Once CPS Energy presented evidence establishing that the emergency exception applied, Smith was required to plead and present evidence of at least one of the following: (1) CPS Energy was not responding to an emergency call or reacting to an emergency situation; (2) CPS Energy was not in compliance with the laws and ordinances applicable to the emergency action; or (3) CPS Energy's actions were taken with conscious indifference or reckless disregard for the safety of others. *See Hartman*, 201 S.W.3d at 672; *Quested*, 440 S.W.3d at 284; *Rosenbaum*, 2011 WL 6739583, at \*2; *Little*, 259 S.W.3d at 238-39. Smith failed to do so.

Smith did not plead or prove that CPS Energy was not responding to an emergency call or reacting to an emergency situation. Smith did not plead or prove that CPS Energy violated a statute or ordinance. *See Hartman*, 201 S.W.3d at 672 (providing that emergency exception under section 101.055(2) applied when the plaintiffs did not assert that any law or ordinance applied to the activity). Nor did Smith, in response to the plea to the jurisdiction, plead or prove that CPS Energy acted with conscious indifference or reckless disregard in responding to the emergency situation. *See id*. (providing that emergency exception under section 101.055(2) applied when the plaintiffs did not assert that the city's acts or omissions showed that it did not care what happened to motorists). A showing of conscious indifference or reckless disregard in responding to an emergency situation requires proof that a party knew the relevant facts but did not care about the result. *Id*. n.19. Here, the undisputed evidence showed that, upon notification of a downed light

pole near Pine Street and IH-10, CPS Energy dispatched a troubleman to locate the downed light pole. Unable to locate the downed light pole, the troubleman called the CPS Energy dispatcher and advised the dispatcher that he had been searching for the pole and had not been able to locate it. The dispatcher sought clarification of the location of the downed light pole. At this point, the dispatcher was informed of another downed light pole, the light pole involved in Smith's accident.[2] We conclude the evidence does not show that CPS Energy acted with conscious indifference or reckless disregard in responding to an emergency call or reacting to an emergency situation.

- *Smith's Argument*

In his appellate briefing, Smith offers only one argument for why the emergency exception did not apply. According to Smith, the emergency exception did not apply here because there was "no evidence that CPS Energy ever responded to the scene of the wreck involving [him.]" We reject this argument for several reasons. First, Smith cites no authority to support this argument. Second, whether or not CPS Energy arrived at the scene of Smith's accident is irrelevant. Smith's claims involve CPS Energy's response or reaction to the downed light pole that he struck, a light pole that had been knocked down by another motorist prior to Smith's accident. Finally, Smith's argument conflicts with the Texas Supreme Court's broad construction of section 101.055(2) articulated in *Hartman*. 201 S.W.3d at 672-73. In *Hartman*, the Texas Supreme Court acknowledged that section 101.055(2) applied to a variety of circumstances, refused to construe section 101.055(2) "to exclude emergencies the Legislature might have intended to include," and emphasized that the "statute exempts governments reacting to an emergency *situation*…." *Id.* at 673 (emphasis in original). In *Hartman*, the plaintiffs sued the city after their family members drowned when their car drove into a flooded street and was swept away by the current. *Id.* at 669.

---

[2]The evidence also includes a police report which indicates that the San Antonio Fire Department removed the downed light pole from the roadway while at the scene of Smith's accident.

The crux of the plaintiffs' lawsuit was that the city's placement of barricades around the flooded street was inadequate. *See id.* at 673. The Texas Supreme Court held that an emergency situation existed, and the trial court had no subject-matter jurisdiction over the plaintiffs' claims because the city retained its governmental immunity under the emergency exception. *Id.* at 669, 673. Similarly, in this case, the crux of Smith's lawsuit is that CPS Energy's response or reaction to the downed light pole was inadequate. Furthermore, the evidence in this case conclusively established that Smith's claims arose from CPS Energy's response to an emergency call or a reaction to an emergency situation. Therefore, the emergency exception applies and the trial court has no subject-matter jurisdiction over Smith's claims against CPS Energy.

- *City of San Antonio v. Torres*

Although the dissent asserts otherwise, our reasoning in this case is consistent with our reasoning in *City of San Antonio v. Torres*, No. 04-17-00309-CV, 2017 WL 5472537, at *1 (Tex. App.—San Antonio Nov. 15, 2017, no pet.). In *Torres*, the jurisdictional facts overlapped with the merits of the plaintiffs' case, and the evidence was disputed as to (1) whether the officer's actions were in compliance with the applicable statutes and ordinances, and (2) whether the officer did not act with conscious disregard for the safety of others. *Id.* at *5. Therefore, in *Torres*, the trial court was required to analyze the plea to the jurisdiction under a summary judgment-like framework. *See Poindexter*, 306 S.W.3d at 806 (noting that when the jurisdictional issue or facts do implicate the merits of the plaintiff's case, the trial court does not act as a factfinder and the defendant is put to a burden very similar to that of a movant in a summary judgment; that is, if the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction and the fact issue will be resolved by the factfinder at trial). Our reasoning in *Torres* was necessarily guided by these circumstances. *See id.* at *3 (stating that because the "immunity inquiry is inextricably bound to the merits of [the plaintiffs'] claim, the burdens and our review

mirror summary judgment practice."). Here, by contrast, the jurisdictional facts do not overlap with the merits of Smith's claims and the jurisdictional evidence is undisputed. *See Poindexter*, 306 S.W.3d at 806 (noting that when the jurisdictional issue or facts do not implicate the merits of the plaintiff's case and the relevant jurisdictional facts are undisputed, the trial court makes the jurisdictional determination as a matter of law based solely on those undisputed facts).[3]

## CONCLUSION

Because Smith's claims arise from CPS Energy's actions in responding to an emergency call or reacting to an emergency situation, they are barred by section 101.055(2) of the TTCA.[4] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.055(2). We, therefore, conclude the trial court erred by not granting CPS Energy's plea to the jurisdiction as to all of Smith's claims.

We reverse the portion of the trial court's order denying CPS Energy's plea to the jurisdiction, and render judgment granting CPS Energy's plea to the jurisdiction in its entirety and dismissing all of Smith's claims against CPS Energy.

Karen Angelini, Justice

---

[3]We recognize that even if the jurisdictional issue in this case did implicate the merits of Smith's claims, thus requiring the use of a summary judgment-like framework, the trial court was still required to rule on the plea to the jurisdiction as a matter of law because the relevant jurisdictional facts were undisputed. *See Univ. of Texas v. Poindexter*, 306 S.W.3d 798, 806 (Tex. App.—Austin 2009, no pet.) (citing *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227-28 (Tex. 2004)).

[4]When applicable, the emergency exception overrides any waiver of immunity *See City of San Antonio v. Hartman*, 201 S.W.3d 667, 671 (Tex. 2006). Because we have determined that the emergency exception applies here, we need not address whether CPS Energy's immunity was waived because the issue is unnecessary to the disposition of this appeal. *See* TEX. R. APP. P. 47.1 (requiring appellate courts to address only issues necessary to the final disposition of an appeal).