**Affirmed and Memorandum Opinion filed January 11, 2022.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-20-00190-CV

---

### CITY OF HOUSTON, Appellant

### V.

### CRYSTAL GREEN, Appellee

---

**On Appeal from the 133rd District Court
Harris County, Texas
Trial Court Cause No. 2019-12122**

---

## MEMORANDUM OPINION

Appellee Crystal Green filed suit against appellant City of Houston ("the City") after a collision involving Green and Officer Samuel Omesa of the Houston Police Department. The City challenges the trial court's denial of its motion for summary judgment. In two issues, the City argues that the trial court erred by failing to grant its traditional motion for summary judgment because (1) the City retained immunity under the emergency exception of the Texas Torts Claims Act ("TTCA"); and (2) Omesa was shielded by official immunity. We affirm.

# I. BACKGROUND

Omesa is a police officer for the City of Houston. On March 18, 2017, Omesa received a priority two call for service regarding a suspicious person with a weapon. In an affidavit, Omesa explained that "[p]riority two calls for service represent in-progress property crimes and/or a potential threat to human welfare, and assume that if not in progress, the event recently occurred, or response to the scene is urgent." Earlier in his shift, Omesa had assisted another unit at the same location. Omesa was responding to the call as a backup unit. The priority two call stated that the suspect from the earlier incident was now armed with a screwdriver and a handgun.

According to Omesa's affidavit, as he traveled to the scene of the incident, he drove around 35–40 miles per hour with his emergency overhead lights activated and his siren activated "intermittently." At each intersection, Omesa came to a complete stop and looked both ways to clear the intersection. Officer Omesa proceeded through approximately three intersections in this same manner. As Omesa was travelling northbound on Hillcroft, he came to the intersection at Richmond Avenue. According to Omesa, he had a red light and came to a complete stop. With his lights still activated, he proceeded through the red light and into the intersection, and crashed into Green's vehicle, which was proceeding westbound through a green light. In his deposition testimony, Omesa asserted that although he remembered having his emergency lights turned on at the time of the collision, he could not specifically recall if his siren was activated. Instead, he testified that he operated his sirens "intermittently."

On February 18, 2019, Green filed this action against the City, arguing that the city was vicariously liable for the negligent conduct of Omesa and for negligently hiring Omesa, entrusting a vehicle to Omesa, and failing to properly

2

train and supervise Omesa.

On September 6, 2019, the City filed a traditional motion for summary judgment on two grounds. First, the City argued that it retained its sovereign immunity because it was shielded by the official immunity of its employee. Second, the City asserted that the TTCA's emergency response exception preserved the City's immunity. Accordingly, the City argued that Green's claims should be dismissed for lack of subject matter jurisdiction. In support of its motion, the City submitted affidavits from Omesa and Sergeant J. Seymour of the Houston Police Department.

In his affidavit, Omesa asserted that his siren was activated "intermittently" on the way to the incident. He also claimed that a reasonably prudent officer in similar circumstances could have believed that his actions were justified. Likewise, Seymour's affidavit asserted that Omesa "properly and reasonably decided that the need to quickly reach the scene of the incident outweighed any minimal risk of harm to others from his driving and from proceeding through the intersection."

Green filed a response and attached an affidavit from Michelle Cummings, the transcript from Omesa's deposition, reports and an affidavit from expert Dean Nance, and the accident report prepared by the Houston Police Department. In Cummings's affidavit filed with Green's response to the City's motion, Cummings stated that she was in the passenger seat of Green's vehicle during the collision and that Omesa "was travelling very fast and was operating his vehicle without sirens to alert us."

The transcript from Omesa's deposition included the following exchange:

[Question]:      Okay. All right. Go to the next sentence.

[Omesa]:         Unit number one failed to use due caution, striking

3

unit number two.

[Question]: Okay. Do you agree with that sentence?

[Omesa]: Yes, sir.

[Question]: So you agree you failed to use due caution?

[Omesa]: I agree I struck unit number two.

[Question]: I understand that, but do you agree you failed to use due caution?

[Omesa]: Yes, sir.

[Question]: I'm sorry?

[Omesa]: Yes, sir.

[Question]: Yes, sir? Okay. Let's go to the next sentence.

[Omesa]: I don't understand what you're trying to insinuate with due caution, but—

[Question]: Well, the investigating officer wrote that. Not me.

[Omesa]: Right. I didn't write it, either.

[Question]: Right. The investigating officer wrote that you failed to use due caution.

[Omesa]: Okay.

[Question]: Do you agree with that?

[Omesa]: Yes, sir.

. . . .

[Question]: Okay. So you need—in order to operate your emergency vehicle in good faith, responding to an emergency situation, you must have the sirens and lights on when going through an intersection. Would you agree?

[Omesa]: Yes, sir.

Nance, an accident reconstruction expert, provided an affidavit and

4

preliminary report, which was attached to Green's summary judgment response. In his report, Nance reached the following conclusions:

1. Officer Omesa failed to follow the Houston Police Department's training manual, the Texas Transportation Code, and the Houston Police Department's Policy and Procedures.

2. Officer Omesa Failed to Use Due Care and had the duty to operate the vehicle with appropriate regard for the safety of all persons, under the Texas Transportation Code, Sec. 546.005, Duty of Care.

3. Officer Omesa was negligent in the operation of his motor vehicle by failing to keep a proper lookout ahead of his vehicle and scan for other motorists before proceeding through a red light signal intersection.

4. Officer Omesa failed to take evasive action to apply his brakes and turn left to avoid a collision.

5. Ms. Green had a clear green traffic signal giving her only a short time to perceive and react to vehicle entering her lane of traffic.

6. Officer Omesa should have taken more time before proceeding through a red light at nighttime and given more time to crossing traffic to be alert and aware of his presence by using his emergency lights and siren.

7. Officer Omesa's Vehicular Crimes Division found him at fault in the crash for Fail [sic] to Use Due Caution.

After two continuances, the City's motion was re-set for oral hearing on February 24, 2020.[1] On February 24, 2020, the trial court denied the City's motion. This appeal was timely filed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a); *City of Houston v. Atser, L.P.*, 403 S.W.3d 354, 357 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) ("An interlocutory appeal may be had when a trial court denies a governmental unit's challenge to subject matter jurisdiction, 'irrespective of the procedural vehicle used.'" (quoting *Thomas v. Long*, 207 S.W.3d 334, 339

---

[1] The court reporter filed an information sheet indicating that there is no reporter's record for this case.

5

(Tex. 2006))).

## II.   STANDARD OF REVIEW

Generally, a governmental entity such as the City is immune from tort liability. *City of Galveston v. State,* 217 S.W.3d 466, 468–69 (Tex. 2007); *Quested v. City of Houston*, 440 S.W.3d 275, 279–80 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Governmental immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 225–26 (Tex. 2004). However, a defendant may also raise the lack of subject-matter jurisdiction in a motion for summary judgment. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *Atser, L.P.*, 403 S.W.3d at 357. Upon such a jurisdictional challenge, regardless of the procedural vehicle used, the trial court may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. *Blue*, 34 S.W.3d at 555.

We review a challenge to the trial court's jurisdiction de novo. *State v. Holland,* 221 S.W.3d 639, 642 (Tex. 2007). We first look to the pleadings to determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Miranda,* 133 S.W.3d at 226. We construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept as true the factual allegations in the pleadings. *See id.*; *Martinez v. Harris County*, 526 S.W.3d 557, 562 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *Quested*, 440 S.W.3d at 279.

When, as here, the governmental unit challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties. *See Miranda,* 133 S.W.3d at 227. The standard of review for a jurisdictional challenge based on evidence "generally mirrors that of a summary judgment under Texas

6

Rule of Civil Procedure 166a(c)." *Id.* at 228. Under this standard, we credit evidence favoring the nonmovant and indulge all reasonable inferences in the nonmovant's favor. *See id.* The defendant must assert the absence of subject-matter jurisdiction and present conclusive proof that the trial court lacks subject-matter jurisdiction. *Id.* If the defendant discharges this burden, then the plaintiff must present evidence sufficient to raise a material issue of fact regarding jurisdiction, or the jurisdictional challenge will be sustained. *Id.*

### III.   TTCA EMERGENCY EXCEPTION

In the City's first issue, it argues that the TTCA's emergency exception applies.

### A.   Applicable Law

The Texas Tort Claims Act (TTCA) provides a limited waiver of immunity for tort suits against governmental units. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021; *Tex. Dep't of Transp. v. Able,* 35 S.W.3d 608, 611 (Tex. 2000); *Quested*, 440 S.W.3d at 279. As relevant to this case, a governmental entity may be liable for the torts of its employee "acting within his scope of employment" arising from the operation or use of motor-driven vehicles or equipment if the "employee would be personally liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1)(B); *see DeWitt v. Harris County*, 904 S.W.2d 650, 653 (Tex. 1995). If the employee is protected from liability by official immunity, then the employee is not personally liable to the claimant and the governmental unit retains its sovereign immunity. *DeWitt,* 904 S.W.2d at 653.

Additionally, under the "emergency exception," the TTCA does not apply to a claim arising:

> from the action of an employee while responding to an emergency call
> or reacting to an emergency situation if the action is in compliance

7

with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others.

Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2). The plaintiff has the burden of proof to establish that the emergency exception does not apply. *Quested*, 440 S.W.3d at 284; *see Tex. Dep't of Pub. Safety v. Little,* 259 S.W.3d 236, 238–39 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

## B.    Application

In its motion for summary judgment, the City argued that the emergency exception applied because Omesa was driving in response to an emergency call, did not break any applicable laws or ordinances pertaining to emergency vehicles, and did not show a reckless disregard for the safety of others. In her response to the City's motion for summary judgment, Green acknowledged that to demonstrate the emergency exception does not apply, she was required to present evidence of one of the following: (1) Omesa was not responding to an emergency call or reacting to an emergency situation, (2) Omesa's actions were not in compliance with the laws and ordinances applicable to emergency action, or (3) Omesa's actions show that he did not care what happened to motorists. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2); *Quested*, 440 S.W.3d at 284. Green did not argue that Omesa was not responding to an emergency call. Instead, Green asserted that:

> Omesa failed to follow the Houston Police Department's training manual, the Texas Transportation Code, and the Houston Police Departments Policy and Procedures by failing to use his sirens while travelling through the intersection and by failing to operate the vehicle with appropriate regard for the safety of all persons pursuant to the Texas Transportation Code, Sec. 546.005, Duty of Care.

In her response to the City's motion for summary judgment, Green asserted that by failing to use his sirens while driving through a traffic intersection, Omesa failed to comply with § 546.005 of the Texas Transportation Code, the Houston

Police Department training manual, and Houston Police Department policy and procedures. Green also alleged that Omesa failed to operate the vehicle with appropriate regard for the safety of others pursuant to § 546.005 of the Transportation Code. *See* Tex. Transp. Code Ann. § 546.005. As we discuss below, because § 546.005 addresses reckless disregard for the safety of others, we will examine together whether Green raised a fact issue as to Omesa's alleged reckless disregard and non-compliance with the law.

Section 546.005 of the Texas Transportation Code states: "This chapter does not relieve the operator of an authorized emergency vehicle from: (1) the duty to operate the vehicle with appropriate regard for the safety of all persons; or (2) the consequences of reckless disregard for the safety of others." Tex. Transp. Code Ann. § 546.005. To create a fact question as to the reckless disregard for the safety of others, Green was required to present some evidence that at the time of the collision, Omesa "knew the relevant facts" but "did not care what happened to motorists." *See Quested*, 440 S.W.3d at 285 (quoting *City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 (Tex. 2006)).

During his deposition, Omesa acknowledged that he was aware of the danger posed to other vehicles when responding to an emergency situation, and specifically to the collision involving Ms. Green:

| [Question]: | Sure. Do you agree when you're responding to an emergency situation such as the one you were responding to when you got in the collision with Ms. Green, there's other traffic on the road, that there is the potential to get into a collision with another vehicle, correct? |
|---|---|
| [Omesa]: | That's correct. |
| [Question]: | And if you do, someone could be injured, correct? |

9

[Omesa]:          That's correct.

[Question]:       Someone could be killed. Would you agree with that?

[State's counsel]: Objection, form.

[Omesa]:          Yes, sir.

Omesa confirmed that as he approached the intersection, he had a red light, it was dark, and that cars in the other lanes were obstructing his vision of Green's lane. Omesa alleged that his siren was intermittently deployed as he was driving, but he could not specifically recall if his sirens were activated prior to or at the moment of impact.[2]

The City argues that Omesa did not act with conscious indifference or reckless disregard for others because Omesa "traveled at approximate[ly] 35–45 miles per hour, traveled with his emergency lights activated for the entirety of his response, came to a dead stop at each intersection, checked for cross-traffic, operated his siren intermittently, ensured other vehicles yielded to his emergency vehicle, and *only then* proceeded into each intersection." (emphasis in original).

According to Omesa's affidavit, he came to a complete stop at the intersection of Hillcroft and Richmond Avenue and "had my emergency lights on and operated my siren intermittently." In his deposition, Omesa claims that he

---

[2] We note that there is no specific legal requirement for an officer to have their siren activated as they pass through a red light. However, when faced with "an official traffic-control device," a motorist is required to stop and "may proceed when the intersection can be safely entered without interference or collision with traffic using a different street or roadway." Tex. Transp. Code Ann. § 545.151(a)(2). Additionally, under certain circumstances, police officers are authorized to violate traffic laws so long as it is safe to do so. *See id.* § 546.001(2). For example, § 546.001(2) authorizes a police officer to "proceed past a red or stop signal or stop sign, after slowing as necessary for safe operation." *Id.* § 546.001(2).

10

remembers having his emergency lights turned on at the time of impact with Green, but he never affirmatively stated that his siren was active prior to or at the time of the collision. Instead, Omesa stated in his affidavit that his siren was used "intermittently" as he travelled to the incident site. In his deposition, Omesa stated that both his sirens and lights were on as he approached one of the intersections he crossed before arriving at the intersection where the collision occurred. Omesa then testified in his deposition that he does not recall whether his siren was active when he crashed into Green's vehicle.

In her affidavit, Cummings stated that Omesa "was travelling very fast and was operating his vehicle without sirens to alert us." This supports an inference that Omesa did not stop before proceeding into the intersection and was not operating his sirens prior to or at the time of the collision. Further, Omesa admitted during his deposition that he failed to use due caution.

The State filed a supplemental letter to this Court, arguing that a recent case from the Thirteenth Court of Appeals provides support for its proposition that summary judgment should have been granted in the present case. *See Tex. Dep't of Pub. Safety v. Escobar*, No. 13-20-00267-CV, 2021 WL 6129135, at \*4 (Tex. App.—Corpus Christi–Edinburg Dec. 29, 2021, no pet. h.) (mem. op.). However, we find *Escobar* to be distinguishable from the present case. In *Escobar*, it was undisputed that the officer had both his lights and sirens activated as he proceeded through the intersection and that the officer stopped his vehicle before crossing through the red light. *See id.* In the present case, there is a factual dispute as to whether the officer's sirens were activated because Omesa admitted that he cannot recall if his sirens were active at the time of impact, and Cummings testified Omesa's sirens were not on to alert them. Additionally, there is a factual dispute concerning whether Omesa stopped prior to entering the intersection. Although

Omesa claims to have come to a complete stop, Cummings's affidavit asserts that Omesa was travelling at a high rate of speed at the moment of impact.

Viewing this evidence in the light most favorable to Green, we conclude that Green raised a fact issue as to whether Omesa's conduct was reckless because the evidence supports an inference that Omesa entered the intersection without stopping and without his sirens on, despite knowing that he had a red light, it was dark, that his view of the traffic was partially obstructed, and that a collision with another vehicle that could cause serious injury was possible. *See Quested*, 440 S.W.3d at 285; *see also Zapata v. City of Gonzales*, No. 13-18-00065-CV, 2020 WL 486489, at *5 (Tex. App.—Corpus Christi–Edinburg Jan. 30, 2020, no pet.) (mem. op.) (concluding that a fact issue existed as to whether officer was reckless because, under plaintiff's version of events, the officer "drove through the intersection on a red light without slowing his vehicle or waiting or the cross-traffic to yield"); *City of Brazoria, Tex. v. Ellis*, No. 14-14-00322-CV, 2015 WL 3424732, at *7 (Tex. App.—Houston [14th Dist.] May 28, 2015, no pet.) (mem. op.) (concluding that a fact issue existed as to officer's recklessness because there was a factual dispute regarding whether the officer was using his siren as he approached an intersection in which his vision was partially obstructed); *City of Missouri City v. Passante*, No. 14-09-00634-CV, 2010 WL 2998777, at *8 (Tex. App.—Houston [14th Dist.] Aug. 3, 2010, no pet.) (mem. op.) (concluding that a fact issue existed as to officer's recklessness because there was a factual dispute regarding whether the officer's lights and sirens were active when he crossed the intersection).

Accordingly, the trial court did not err in denying the City's motion for summary judgment on this ground. *See Miranda,* 133 S.W.3d at 226. We overrule the City's first issue.

## IV.   OFFICIAL IMMUNITY

In the City's second issue, the City asserts that it is shielded from Green's claims because of Omesa's official immunity.

## A.   Applicable Law

The City, as a municipality and political subdivision of the State, cannot be vicariously liable for an employee's acts unless its governmental immunity has been waived. *See City of Pasadena v. Belle*, 297 S.W.3d 525, 529 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Under the facts of this case, the only possible waiver of the City's immunity from suit and liability is found in § 101.021 of the TTCA, which provides in relevant part:

> A governmental unit in the state is liable for . . . property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
> (A)   the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>
> (B)   the employee would be personally liable to the claimant according to Texas law.

Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1).

A police officer's official immunity, if applicable, prevents the police officer from being personally liable to the claimant under Texas law. *See Gomez v. City of Houston*, 587 S.W.3d 891, 897 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). Because official immunity is an affirmative defense, the burden rests on the City to establish all elements of the defense. *See id.*; *Belle*, 297 S.W.3d at 530; *Green v. Alford*, 274 S.W.3d 5, 16 n.11 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (en banc). Under the official-immunity defense, a government employee may be immune from a lawsuit that arises from the performance of the

employee's discretionary duties in good faith, provided the employee was acting within the scope of the employee's authority. *See Gomez*, 587 S.W.3d at 897; *Belle*, 297 S.W.3d at 530–31.

We measure good faith under a standard of objective reasonableness without regard to the officer's subjective state of mind. *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997); *see City of Lancaster v. Chambers*, 883 S.W.2d 650, 656 (Tex. 1994).

> [G]ood faith depends on how a reasonably prudent officer could have assessed both the *need* to which an officer responds and the *risks* of the officer's course of action, based on the officer's perception of the facts at the time of the event. The "need" aspect of the test refers to the urgency of the circumstances requiring police intervention. In the context of an emergency response, need is determined by factors such as the seriousness of the crime or accident to which the officer responds, whether the officer's immediate presence is necessary to prevent injury or loss of life or to apprehend a suspect, and what alternative courses of action, if any, are available to achieve a comparable result. The "risk" aspect of good faith, on the other hand, refers to the countervailing public safety concerns: the nature and severity of harm that the officer's actions could cause (including injuries to bystanders as well as the possibility that an accident would prevent the officer from reaching the scene of an emergency), the likelihood that any harm would occur, and whether the risk of harm would be clear to a reasonably prudent officer.

*Wadewitz*, 951 S.W.2d at 467 (internal citations omitted) (emphasis in original). "[A]n officer acts in bad faith only if he could not have reasonably reached the decision in question." *Univ. of Hous. v. Clark*, 38 S.W.3d 578, 581 (Tex. 2000).

If the officer meets his initial burden of demonstrating good faith, then it becomes the nonmovant's burden to controvert the officer's proof of good faith. *See Clark*, 38 S.W.3d at 581. To controvert a police officer's summary judgment proof of good faith, the nonmovant must do more than merely show that a reasonably prudent officer might have made a different decision; instead, the

nonmovant must show that "no reasonable person in the officer's position could have thought that the facts justified the officer's acts." *See id.* Additionally, to sufficiently controvert an officer's proof of good faith, the nonmovant's "[e]xpert testimony on good faith must address . . . the need and risk factors." *City of San Antonio v. Ytuarte*, 229 S.W.3d 318, 321 (Tex. 2007).

Conclusory statements that a reasonably prudent officer "could or could not have taken some action will not establish good faith on summary judgment nor raise a fact issue to defeat summary judgment." *Clark*, 38 S.W.3d at 581. Instead, testimony regarding good faith must discuss what a reasonably prudent officer could have believed under the circumstances and must be substantiated with reference to the need-versus-risk analysis. *See id.*

## B. Application

The City asserts—and Green does not dispute—that Omesa was performing discretionary duties within the scope of his authority at the time of the collision. *See Garza v. City of Houston*, No. 14-06-00475-CV, 2007 WL 2089287, at *2 (Tex. App.—Houston [14th Dist.] July 24, 2007, no pet.) (mem. op.) ("It is undisputed that, at the time of the accident, Carbonneau was an on-duty police officer, in an HPD patrol car, responding to an emergency call. Thus, he was performing a discretionary act within the scope of his authority."). We agree. The record reflects that it is undisputed that at the time of the accident, Omesa was an on-duty police officer, travelling in a patrol car owned by the Houston Police Department, and responding to an emergency call. *See Junemann v. Harris County,* 84 S.W.3d 689, 693 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) ("Actions that involve personal deliberation, decision, and judgment are discretionary; actions that require obedience to orders or the performance of a duty to which the actor has no choice, are ministerial."); *Galveston Cnty. Health Dist. v.*

*Hanley*, No. 01-14-00166-CV, 2014 WL 6853608, at *6 (Tex. App.—Houston [1st Dist.] Dec. 4, 2014, no pet.) (mem. op.). Therefore, we turn to whether the City met its initial burden to prove that Omesa was carrying out his duties in good faith. *See Gomez*, 587 S.W.3d at 897.

Omesa stated in his affidavit that he was responding to a priority two call for service regarding a suspicious person with a weapon. According to Omesa, the standard response to priority two calls for service is without emergency equipment; however, if the situation clearly warrants the use of emergency equipment, the officer has the option to use it. For these reasons, Omesa asserted that he decided to activate his lights and intermittently use his sirens as he traveled to the scene of the suspicious person. Furthermore, Omesa claimed that "[f]or the safety of officers, when a call involves a disturbance, dispatch makes sure that at least two units respond. As the secondary officer to this disturbance, it was urgent for me to reach the scene to aid my fellow officer."

Omesa explained in his affidavit that it was a little after 3:00 a.m., it was dark, he was driving approximately 35-40 miles per hour and then stopped at the intersection, looked in both directions, and proceeded through the intersection even though other cars obscured his vision of Green's lane. Omesa claims that he took into consideration the risk posed by the suspect returning with a screwdriver and a gun to the scene of the prior call, and the risk that his driving posed to other drivers. In his affidavit, Omesa asserted that a reasonably prudent officer in similar circumstances could believe that the need to arrive immediately at the scene to provide backup outweighed the minimal risks that his driving presented. But, as to his driving, Omesa asserted that he came to a complete stop and activated his sirens "intermittently" before he ran the red light and entered the intersection; this is contradicted by Green's version of events (which is in turn supported by

16

Cummings's affidavit).

Green argues that the present case is similar to *Gomez* and that we should likewise hold that the City failed to establish good faith. *See id.* The City of Houston argues that *Gomez* is distinguishable. We agree with Green. In *Gomez*, we concluded that the City failed to meet its burden to establish good faith; in doing so, we specifically noted that the affidavits from the police officers "assume[d] the truth of disputed facts." *Id.* at 899. The officer who was involved in the accident asserted in his affidavit that he continuously used his emergency lights; however, the plaintiff's affidavit and an investigation report indicated that the officer's lights were not on immediately prior to the collision. *See id.* Thus, we distinguished that case from *Ytuarte* and concluded that the City failed to conclusively demonstrate that the officer acted in good faith. *See id.*

Likewise, in the present case, Omesa's deposition and affidavit testimony assumed the truth of disputed facts. He asserted that his emergency lights were activated as he crossed the intersection and he claimed that he had activated his sirens "intermittently," but Cummings asserted that Omesa's sirens were not activated. Omesa did not offer a good-faith opinion based on a need-versus-risk analysis under the alternative scenario that Omesa was not using his sirens as he approached the intersection. *See id.* Thus, the City did not establish that a reasonably prudent officer in similar circumstances could have believed that Omesa's action of crossing through a red light without his sirens on, while it was dark and his vision was partially obstructed, was justified. *See id.*; *see also Ellis*, 2015 WL 3424732, at *7 (concluding there was a fact issue as to good faith because "it [was] not clear that [the officer] analyzed the risk posed by his obstructed view").

Additionally, we note that while Omesa testified to some aspects of the

17

need-versus-risk analysis, he did not testify concerning the availability of alternative courses of action, if any, that he could have taken. *See Clark*, 38 S.W.3d at 581. "Summary-judgment proof does not provide a 'suitable basis' for determining good faith if it fails to address several factors we have identified as bearing on the need/risk analysis, including the availability of any alternative action." *Tex. Dep't of Pub. Safety v. Bonilla*, 481 S.W.3d 640, 644 (Tex. 2015) (per curiam); *see Gomez*, 587 S.W.3d at 897–98. The evidence submitted by the City in support of its motion failed to address whether Omesa had any available alternatives, or whether such alternatives would have been viable given the circumstances. *See Bonilla*, 481 S.W.3d at 644; *Gomez*, 587 S.W.3d at 897–98.

Because the evidence does not reflect that Omesa considered alternative actions and because the City's evidence of good faith assumes the truth of disputed facts, we conclude that the City did not conclusively establish that Omesa acted in good faith. *See Clark*, 38 S.W.3d at 580–81; *Gomez*, 587 S.W.3d at 897–901. Accordingly, the burden never shifted to Green to produce controverting evidence to rebut Omesa's good faith. *See Rodriguez*, 344 S.W.3d at 488–89. Thus, the trial court did not err by denying the City's motion for summary judgment. We overrule the City's second issue.

## V.    CONCLUSION

We affirm the order of the trial court.


/s/    Margaret "Meg" Poissant
         Justice


Panel consists of Chief Justice Christopher and Justices Hassan and Poissant.

18