AFFIRM; Opinion issued December 4, 2012.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-00430-CV

## KAUFMAN COUNTY, Appellant

## V.

## CHRISTOPHER LEGGETT, Appellee

On Appeal from the 422nd Judicial District Court
Kaufman County, Texas
Trial Court Cause No. 81109-422

# OPINION

Before Justices Morris, Francis, and Murphy
Opinion By Justice Murphy

Kaufman County appeals the trial court's interlocutory order denying its plea to the jurisdiction in Christopher Leggett's suit for personal injuries. We affirm.

### BACKGROUND

Leggett sued the County after sustaining injuries when Sergeant Richard Gaddis, a Kaufman County sheriff's deputy, "rear-ended" Leggett's motorcycle with his patrol car during a traffic stop. The collision occurred the morning of October 24, 2008. Gaddis was on his way to work, driving an unmarked patrol car on Highway 175. At one point, Gaddis looked in his rear-view mirror and saw two or three cars swerving to get out of the way of a motorcycle that was coming up from behind. Leggett was the driver of the motorcycle. According to Gaddis, Leggett was "driving crazy"

and "flying up" on Gaddis, who was driving a speed consistent with the flow of traffic. Gaddis estimated Leggett was driving "[a] lot faster than 70" miles per hour.

As Leggett passed, Gaddis turned on his emergency lights to get Leggett's attention; Gaddis believed "[s]omebody needs to slow this guy down." The emergency lights on Gaddis's unmarked police vehicle were located in the front headlights and flashed on and off when activated. Gaddis's vehicle also had a red and blue shining light located inside the vehicle just above the rear-view mirror. His vehicle did not have a siren or other markings that would identify it as a police unit. When he turned on his emergency lights, Gaddis did not believe Leggett saw them or knew Gaddis was behind him because Leggett "was driving so fast." Gaddis then sped up, going as fast as 107 miles per hour, to catch up with Leggett. Gaddis also called for assistance from another law-enforcement agency.

Around the same time, Leggett looked back and saw that Gaddis was trying to pull him over. Leggett noticed Gaddis was approaching him "at a fairly high rate of speed" and "gaining on [him] very fast." Leggett realized he needed to stop and signaled to Gaddis with his hand that he was pulling over. Leggett slowed down in the right-hand lane and moved off the road onto the shoulder at the same time, "[j]ust like your normal traffic stop." As Leggett was coming to a stop and putting his kick-stand down, Leggett heard "screaming tires" and saw Gaddis "barreling" toward him. Leggett tried to move out of the way, but he did not have enough time. Gaddis's vehicle hit the rear of Leggett's motorcycle. Leggett was thrown off his motorcycle and landed face down in a ditch. Gaddis's vehicle left skid marks measuring ninety-eight feet.

Leggett filed suit against the County, seeking damages for injuries he sustained in the collision. He did not seek damage to his motorcycle because the County resolved that claim. Leggett alleged Gaddis's conduct of traveling at an excessive rate of speed before colliding with

Leggett's motorcycle was "not only negligent" but also "extremely dangerous, reckless and grossly negligent." He further alleged Gaddis's conduct violated internal policies for the operation of a patrol unit and was such that no objectively reasonable police officer could have believed such conduct was lawful.

The County filed a plea to the jurisdiction, arguing the trial court did not have jurisdiction of the case because the Texas Tort Claims Act's (TTCA) statutory exception for emergencies applied, overriding any waiver of its governmental immunity from suit. In response, Leggett argued the statutory exception did not apply because the evidence (1) showed Gaddis was engaged in a routine traffic stop, not an emergency situation, and (2) raised a fact issue as to whether Gaddis's actions were reckless. In support, Leggett attached excerpts from his and Gaddis's depositions as well as a document containing portions of the County's policies and procedures related to the operation of police vehicles and pursuits. The trial court held an evidentiary hearing, during which Leggett and two other witnesses testified. Other documents, including photographs of the scene, affidavits of a witness and the investigating officer, and the complete transcript of Leggett's and Gaddis's depositions, were admitted as evidence. After allowing the parties to submit post-hearing letter briefs, the trial court signed an order denying the County's plea without specifying the basis for the denial. The County filed this interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West 2008).

## LEGAL STANDARDS

Immunity from suit defeats a trial court's subject-matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). Whether a court has subject-matter jurisdiction and whether a plaintiff has alleged facts that affirmatively demonstrate a trial court's subject-matter jurisdiction are questions of law. *Id.* at

–3–

226; *Perez v. City of Dallas*, 180 S.W.3d 906, 909 (Tex. App.—Dallas 2005, no pet.). We therefore review de novo a trial court's ruling on a jurisdictional plea. *Miranda*, 133 S.W.3d at 226; *City of Dallas v. Hughes*, 344 S.W.3d 549, 553 (Tex. App.—Dallas 2011, no pet.).

A governmental unit's jurisdictional plea can be based on the pleadings or on evidence. *Miranda*, 133 S.W.3d at 226; *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). When a plea to the jurisdiction challenges the pleadings, we look to whether the plaintiff has alleged facts that affirmatively demonstrate the trial court's jurisdiction to hear the case. *Miranda*, 133 S.W.3d at 226 (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). We liberally construe the plaintiff's pleadings in favor of jurisdiction, and we look to the plaintiff's intent, accepting as true the facts alleged. *Id.* at 226, 228.

When a plea challenges the existence of jurisdictional facts, we must consider relevant evidence submitted by the parties to resolve the jurisdictional issues. *Id.* at 227; *Hughes*, 344 S.W.3d at 553. In reviewing such a plea, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the non-movant's favor. *Miranda*, 133 S.W.3d at 227–28. This standard mirrors our summary-judgment standard under Texas Rule of Civil Procedure 166a(c) and places the burden on the governmental unit, as movant, to meet the standard of proof to support its contention the trial court lacks subject-matter jurisdiction. *Id.* at 228. Once the governmental unit asserts and provides evidentiary support for its plea, the plaintiff is then required to show only that a disputed fact issue exists. *Id.*; *City of Dallas v. Heard*, 252 S.W.3d 98, 102 (Tex. App.—Dallas 2008, pet. denied). If the evidence creates a fact question on the jurisdictional issue, the trial court cannot grant the plea; rather the fact issue is for the fact finder to resolve. *Miranda*, 133 S.W.3d at 227–28. If the relevant evidence fails to raise a fact question or is undisputed on the jurisdictional issues, the trial court rules on the plea as a matter of law. *Id.* at

## APPLICABLE LAW

Governmental immunity protects political subdivisions of the State, including counties, from suit and liability. *See Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(B) (West Supp. 2012) (defining "governmental unit" to include political subdivisions of the state, including counties). Immunity is waived under the TTCA, however, for claims arising from the operation or use of a motor-driven vehicle by a governmental unit's employee. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1)(A) (West 2011); *City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 (Tex. 2006). Certain exceptions to that waiver of immunity may apply. *See generally* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.051–.067 ("Exclusions and Exceptions"). Among those exceptions is section 101.055(2), which preserves a governmental unit's immunity for claims arising from the actions of an employee responding to an emergency call or reacting to an emergency situation. *Id.* § 101.055(2). The employee's actions under these circumstances must be in compliance with the laws and ordinances applicable to emergency action, or in the absence of such law, the actions must not be taken with conscious indifference or reckless disregard for the safety of others. *Id.* When the exception applies, the TTCA is unavailable as a waiver of immunity even if the facts otherwise fall within a waiver found in section 101.021. *See Hartman*, 201 S.W.3d at 671–72.

The laws applicable to emergency actions are found in the Texas Transportation Code. For example, an operator of an emergency vehicle may engage in certain permissible conduct, such as exceeding the maximum speed limit when responding to an emergency call or pursuing an actual or suspected violator of the law. *See* TEX. TRANSP. CODE ANN. §§ 546.001(3), 546.002(b)(2) (West 2011). This conduct is permissible as long as the operator does not endanger life or property, and

–5–

he must operate his vehicle "with appropriate regard for the safety of all persons." *Id.* §§ 546.001(3), 546.005(1). The operator of an emergency vehicle is not relieved of the "consequences of reckless disregard for the safety of others." *Id.* § 546.005(2); *see also Smith v. Janda*, 126 S.W.3d 543, 545 (Tex. App.—San Antonio 2003, no pet.). Thus, under section 546.005, those who respond to emergency calls in authorized emergency vehicles, which include police vehicles, are subject to liability if their conduct is reckless. Tex. Transp. Code Ann. § 546.005(2); *City of Pasadena v. Belle*, 297 S.W.3d 525, 534 (Tex. App.—Houston [14th Dist.] 2009, no pet.). To establish liability in this context, a plaintiff must show that the operator "committed an act that [he] knew or should have known posed a high degree of risk of serious injury." *City of Amarillo v. Martin*, 971 S.W.2d 426, 430 (Tex. 1998).

In the absence of applicable laws, immunity is waived if the operator acted with "conscious indifference or reckless disregard for the safety of others." Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2). The TTCA does not define the terms "conscious indifference" or "reckless disregard." In *Hartman*, however, the Texas Supreme Court looked to the ordinary meaning of the terms and noted that the terms have been interpreted to "require proof that a party knew the relevant facts but did not care about the result." *Hartman*, 201 S.W.3d at 672 n.19. In assessing the operator's conduct, we may not engage in "judicial second-guessing for momentary lapses in judgment by emergency personnel responding to emergency situations." *Jefferson Cnty. v. Hudson*, No. 09-11-00168-CV, 2011 WL 3925724, at *3 (Tex. App.—Beaumont Aug. 25, 2011, no pet.) (mem. op.); *cf. Martin*, 971 S.W.2d at 430 (noting "reckless disregard" test under transportation code not satisfied with proof of ordinary negligence or momentary lapses of judgment).

## ANALYSIS

The County contends in two issues that the trial court erred by denying its plea to the

jurisdiction because it retained its immunity from suit pursuant to the emergency exception of the TTCA. The County raised the emergency exception in its plea, arguing immunity is not waived under the TTCA because Leggett's claims "arise from an emergency response" and Leggett cannot meet his burden to present jurisdictional evidence to raise a material fact question as to whether Gaddis's actions were reckless. The County did not challenge Leggett's pleadings in its plea, but it argues on appeal that the "nature of a plea to the jurisdiction itself" is a challenge to the sufficiency of the pleadings because a plaintiff bears the burden to set forth allegations establishing a valid waiver of immunity. The County argues Leggett "fail[ed] to allege an actionable claim within a waiver of immunity." Although we have said we have no jurisdiction in an interlocutory appeal to "consider issues that are outside the plea to the jurisdiction that was filed," *Heard*, 252 S.W.3d at 104, recent authority from the Texas Supreme Court suggests that we are not precluded from addressing this argument. *See, e.g., Rusk State Hosp. v. Black*, No. 10-0548, 2012 WL 3800218, at *6 (Tex. Aug. 31, 2012) (holding that "if immunity is first asserted on interlocutory appeal, section 51.014(a) does not preclude the appellate court from having to consider the issue at the outset in order to determine whether it has jurisdiction to address the merits."). We therefore address the County's contention related to Leggett's failure to allege a waiver of immunity in his pleading.

There appears to be no serious dispute about whether Leggett's allegations establish a waiver of immunity under section 101.021. Leggett alleged he received personal injuries arising from the operation or use of a county vehicle by a county employee. And in its plea, the County agreed Leggett sued the County for Gaddis's conduct, "alleging sovereign immunity is waived" under section 101.021(1).

Leggett's pleading also included allegations that Gaddis's conduct was reckless under the circumstances. Specifically, Leggett alleged he was driving his motorcycle on the highway when Gaddis pulled him over. After Leggett pulled his motorcycle to the shoulder, Gaddis, whom Leggett asserted was traveling at an excessive rate of speed, collided with Leggett's motorcycle. Leggett alleged this conduct was not only negligent but also extremely dangerous, reckless, and grossly negligent. Leggett also alleged Gaddis's conduct was in violation of department policies for the operation of patrol units and was such that no reasonable officer would have believed such conduct was lawful under the circumstances and in light of established law and "information held by Sgt. Gaddis at the time of the occurrence." Leggett listed nine "particulars" in which Gaddis was negligent, reckless, and grossly negligent, including Gaddis's failure to comply with traffic stop policies, control his vehicle, maintain a safe distance between the patrol vehicle and the vehicle in front of him, timely apply his brakes, and turn to avoid the collision. Leggett further alleged Gaddis was driving at a greater rate of speed than a person using ordinary care would have driven. Leggett asserted the County, through its employee, had awareness of the risk involved, but "nevertheless proceeded with conscious indifference to the rights, safety and welfare of [Leggett] and others." When we construe Leggett's pleadings liberally, as we must, we conclude Leggett alleged sufficient facts to establish a waiver of immunity under section 101.021 as well as the non-applicability of the emergency exception. *Miranda*, 133 S.W.3d at 226.

In response to the County's arguments on appeal, Leggett does not assert the County failed to support its contention that the trial court lacks subject-matter jurisdiction or otherwise assert the County failed to meet its burden of proof. The question before us then is whether Leggett raised a

fact question that the actions taken by Gaddis were not taken in response to an emergency, or were reckless. *See Tex. Dep't of Pub. Safety v. Little*, 259 S.W.3d 236, 238–40 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *see also Hartman*, 201 S.W.3d at 672. We express no opinion as to whether Gaddis was responding to an emergency situation because having reviewed the evidence submitted as part of the jurisdictional proceedings, we conclude Leggett met his burden to raise a genuine issue of material fact that Gaddis's actions in trying to stop Leggett and then colliding with Leggett's motorcycle were reckless. *See Hudson*, 2011 WL 3925724, at *4.

To raise a fact issue on whether Gaddis's actions were reckless, Leggett relies on evidence showing that despite Gaddis's training, Gaddis used "excessive" speed in trying to stop Leggett and, knowing Leggett would stop as soon as he saw Gaddis, was unable to control his speed when Leggett did pull over. Gaddis specifically testified he reached a speed of 107 miles per hour (in a 65 mile per hour zone), which Gaddis conceded was "unsafe" under the circumstances. The circumstances included the fact that he was in an unmarked police vehicle. Gaddis testified that when he is engaged in a traffic stop while driving an unmarked vehicle, one concern is that the other vehicles on the road need to be aware he is there. Gaddis added that he knew it can take the person being stopped longer to recognize he is being pulled over. Gaddis stated his only reason for stopping Leggett was because Leggett was speeding. Gaddis had not observed Leggett hitting another vehicle. Nor did Gaddis consider this to be a "pursuit"; that is, he did not believe Leggett was fleeing from law enforcement or otherwise engaged in evasive action.

When Leggett began to slow down and pull onto the shoulder, Gaddis was between sixty and 100 feet behind Leggett. Gaddis testified he was close enough to tell Leggett was "definitely slowing

down." But at that point, Gaddis had slowed to only fifty to sixty miles per hour by applying his brakes. And although Gaddis claimed that he did not know what Leggett would do as he slowed down, Gaddis also testified he expected Leggett would pull onto the shoulder. Leggett testified he had signaled to Gaddis with his hand that he was pulling over and that he decelerated and moved onto the shoulder like a normal traffic stop. Gaddis did not recall seeing Leggett indicate his intention to pull over.

Gaddis testified his training included instruction on "tactical driving," how to "make sure that the surroundings are safe" when engaging in a traffic stop, and stopping distances and times for different road surfaces, such as gravel. Gaddis admitted, however, that he gets nervous "any time [he's] driving fast," and he agreed with the investigating officer's report, which indicated Gaddis was unable to control his speed before he hit Leggett's motorcycle. Gaddis also agreed that during his efforts to stop, his police vehicle skidded, starting in the right-hand lane and continuing onto the shoulder. The shoulder was a concrete surface with loose, "paved gravel." Based on his training, Gaddis knew that stopping abruptly on this surface can cause a loss of control. Photographs of the scene showed Gaddis's vehicle left skid marks measuring ninety-eight feet.

Leggett also relied on the testimony of Mike Cook, a witness to the collision, who testified that he believed Gaddis's actions leading up to the accident were reckless. Cook testified he believed Gaddis's speed was "excessive for the conditions" as they existed on the highway. Cook described traffic as light at the time Leggett passed, but they were coming up on some traffic. Cook estimated that when Gaddis was following Leggett, Gaddis was "maybe 15 feet behind Leggett." Cook testified Gaddis's speed was "too fast" in relation to his "closeness" to Leggett and "[i]f

something was to happen, there ain't no way [Gaddis] would stop." According to Cook, Leggett's stop was not abrupt; Cook testified that when Leggett saw the officer behind him, Leggett proceeded to pull over to the right-hand lane and then to the shoulder.

In support of its contention that Gaddis's actions were not reckless, the County relies on facts showing the collision happened in "an instant" and that Gaddis used his brakes and took evasive measures to avoid the collision. Gaddis testified in his deposition that as Leggett passed Gaddis's unmarked police vehicle, Gaddis activated his emergency lights to get Leggett's attention. Gaddis sped up because Leggett was getting "further and further away from [him]." Gaddis testified that when Leggett realized he was behind him, Leggett's speed went down "to about 10 miles per hour" in the "blink of an eye." Leggett was in the right-hand lane, and Gaddis claimed he did not "know what [Leggett's] plans were." Gaddis tried to get over to the shoulder, but Leggett moved to the shoulder at the same time. Gaddis testified he did not have enough time to adjust his stopping distances before hitting Leggett's motorcycle with his police vehicle.

The County further maintains reckless disregard is negated because there is no evidence Gaddis knew he would be approaching Leggett "stopped in the roadway" and that Gaddis's action of "swerving to the shoulder would result in Leggett moving in front of him." But Leggett presented evidence that Gaddis used excessive and unsafe speed, followed Leggett too closely in an unmarked police vehicle, knew Leggett was pulling over and expected him to do so, and then was unable to decelerate and control his speed before pulling behind Leggett on a shoulder with a loose gravel surface. The County argues these events happened in "an instant," but Leggett's evidence also shows that before Gaddis hit him, Leggett had time to maneuver his motorcycle to a stop, use his leg

–11–

to put his kick-stand down, attempt to lean his motorcycle over, turn around to see Gaddis "barreling" down on him, "flip" the kick-stand back up, and "jam it down in first gear" to get out of the way. A reasonable person could infer from evidence, such as Cook's testimony about how closely Gaddis was following Leggett despite their high speeds, that Gaddis knew the relevant facts presenting a high degree of risk of serious injury but acted in disregard of that risk. *See Hartman*, 201 S.W.3d at 672 n.19.

When we indulge every reasonable inference and resolve any doubts in Leggett's favor, we conclude there is a dispute regarding whether Gaddis's actions were reckless. *See Miranda*, 133 S.W.3d at 228. Because the evidence creates a fact question on the jurisdictional issue, the trial did not err in denying the County's plea. *Id.* at 227–28.

We overrule the County's two issues and affirm the trial court's order denying the County's plea to the jurisdiction.

MARY MURPHY
JUSTICE

120430F.P05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

KAUFMAN COUNTY, Appellant

No. 05-12-00430-CV     V.

CHRISTOPHER LEGGETT, Appellee

Appeal from the 422nd Judicial District
Court of Kaufman County, Texas.
(Tr.Ct.No. 81109-422).
Opinion delivered by Justice Murphy,
Justices Morris and Francis participating.

In accordance with this Court's opinion of this date, the trial court's order denying appellant Kaufman County's plea to the jurisdiction is **AFFIRMED**. It is **ORDERED** that appellee Christopher Leggett recover his costs of this appeal from appellant Kaufman County.

Judgment entered December 4, 2012.

MARY MURPHY
JUSTICE