# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00898-CV

---

### City of Killeen Police Department, Appellant

### v.

### Gloria Fonseca, Individually and as Next Friend of Julia Fonseca; and Alberto Fonseca, as Next Friend of Julia Fonseca, Appellees

---

### FROM THE 146TH DISTRICT COURT OF BELL COUNTY
### NO. 304,579-B, THE HONORABLE JACK WELDON JONES, JUDGE PRESIDING

---

## D I S S E N T I N G   O P I N I O N

At issue in this appeal is whether the emergency response exception to the limited waiver of governmental immunity under the Texas Tort Claims Act (TTCA) applied to Officer Boehmker's actions. *See* Tex. Civ. Prac. & Rem. Code §§ 101.021, .055(2). I conclude that the exception applies, but the Court concludes that it does not. Accordingly, I respectfully dissent.[1]

Three fundamental and general principles regarding the purposes of sovereign immunity and the emergency response exception frame this dispute:

---

[1] Because the Fonsecas had the opportunity to and did replead by filing their amended petition in response to the police department's original plea to the jurisdiction, they would not be entitled to another opportunity to replead. *See Save Our Springs All. v. City of Austin*, 149 S.W.3d 674, 686 (Tex. App.—Austin 2004, no pet.) ("[I]f a party has repleaded in an attempt to cure disputed jurisdictional issues and if a court can ascertain the nature and issues of the controversy and the evidence that probably would be relevant, that party is not entitled to an opportunity to replead.").

1. **Protecting the public fisc:**  The doctrine of governmental immunity at its core protects the public fisc by immunizing political subdivisions from lawsuits and leaving it to the Legislature to determine when to allow tax resources to be shifted away from their intended purposes toward defending lawsuits and paying judgments.  *See Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 121 (Tex. 2015).

2. **Encouraging immediate action in emergency situations:**  The Legislature has determined that the public good is better served by encouraging public employees to take immediate action in emergency situations and that taxpayer resources should not be shifted to defending lawsuits and paying judgments for imprudent or negligent operation of governmental vehicles.  *See* Tex. Civ. Prac. & Rem. Code § 101.055(2); *City of San Antonio v. Hartman*, 201 S.W.3d 667, 673 (Tex. 2006); *City of Amarillo v. Martin*, 971 S.W.2d 426, 430 (Tex. 1998).

3. **Preventing judicial second-guessing of time-pressured decisions:**  The policy underlying the emergency response exception is to balance the public's safety with the need for prompt emergency response and to prevent judicial second-guessing of the time-pressured decisions emergency personnel are forced to make.  *See Martin*, 971 S.W.2d at 429–30; *City of San Angelo Fire Dep't v. Hudson*, 179 S.W.3d 695, 699 (Tex. App.—Austin 2005, no pet.).

Consistent with these principles, the Legislature has not waived governmental immunity in this context unless there is a fact issue that Officer Boehmker acted with "reckless disregard for the safety of others."  *See* Tex. Transp. Code § 546.005; *Smith v. Janda*, 126 S.W.3d 543, 545 (Tex. App.—San Antonio 2003, no pet.) ("[A] governmental entity is immune from suits to recover damages resulting from the emergency operation of an emergency vehicle unless the operator acted recklessly."); *see also Hartman*, 201 S.W.3d at 672 n.19 (interpreting "reckless disregard" "to require proof that a party knew the relevant facts but did not care about the result"); *Martin*, 971 S.W.2d at 430 (noting that "reckless disregard" test not satisfied with proof of ordinary negligence or of momentary lapses of judgment and that "a plaintiff must show that the operator has committed an act that the operator knew or should have known posed a high degree of risk of serious injury").

In my opinion, the Court undermines these principles by considering allegations and evidence of potentially ordinary negligence as raising a fact issue that Officer Boehmker was acting in reckless disregard for the safety of others. Thus, in this case and in future cases based on today's precedent—notwithstanding the Legislature's intention to except suits based on ordinary negligence or momentary lapses of judgment from the limited waiver of immunity—factfinders will be asked to second-guess time-pressured decisions officers are forced to make while responding to emergencies and tax resources will be shifted to defend these lawsuits, thereby implicating the public fisc.

In this case, Officer Boehmker was pursuing a vehicle whose driver had fled from the police. The driver was driving erratically at a "very high rate of speed" (over 70 miles per hour in a 30 miles per hour speed zone), "with weaving in and out of traffic," through at least one red light, and "into oncoming traffic multiple times." Although Officer Boehmker also reached high speeds and went through stop signals in pursuit, the Texas Transportation Code provides that when an operator of an authorized emergency vehicle is "pursuing an actual or suspected violator of the law," the operator may "proceed past a red or stop signal or stop sign, after slowing as necessary for safe operation," and may "exceed a maximum speed limit . . . as long as the operator does not endanger life or property." *See* Tex. Transp. Code §§ 546.001(2), (3), .002(b)(2).

Moreover, it is undisputed that Officer Boehmker took certain steps with the safety of others in mind. First, Officer Boehmker engaged his emergency vehicle's lights and sirens for the entire duration of the pursuit and, as the Court notes, "frequently used his air horn 'as an extra precaution' while engaged in the pursuit," including as he approached the intersection at issue. *Ante* at ___. The Texas Transportation Code provides that "[o]n the

3

immediate approach of an authorized emergency vehicle using audible and visual signals," other drivers shall yield the right-of-way, immediately pull over clear of any intersection, and stop until the emergency vehicle has passed. Tex. Transp. Code § 545.156(a)(1)–(3). I agree with the Court that the "use of lights and sirens" alone is not "sufficient to preclude a finding of recklessness." *Ante* at ___. But case law emphasizes that the use of emergency lights and sirens is a "crucial factual difference" in applying the emergency response exception. *See Gomez v. City of Houston*, 587 S.W.3d 891, 903 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (en banc) (distinguishing cases applying emergency response exception by noting "crucial factual difference" that those cases "involved undisputed evidence that the officers in the emergency vehicles were using their emergency lights and sirens while responding to an emergency call"); *City of Laredo v. Varela*, No. 04-10-00619-CV, 2011 WL 1852439, at *3–5 (Tex. App.—San Antonio May 11, 2011, pet. denied) (mem. op.) (reversing trial court's denial of City's plea to jurisdiction and dismissing case for lack of subject matter jurisdiction; noting that "[t]he use of his siren, emergency lights and vehicle brakes are acts that indicate Officer Cortinas was aware of the dangers to other[s] as he responded to the emergency call and he was not consciously indifferent to the plight of other drivers"; and holding that "evidence is sufficient to demonstrate that Officer Cortinas did not act with conscious indifference or reckless disregard for the safety of the public" and that City was therefore immune from suit).

Second, uncontradicted evidence showed that Officer Boehmker slowed as he approached the intersection at issue from 66 miles per hour to 51 miles per hour, visually cleared the partially blocked intersection to the extent that he could see, and only increased his speed from 51 miles per hour to 55 miles per hour after he saw that all cars he could see had stopped

4

for the lead police car that had already gone through the intersection with lights and sirens.[2] The Court characterizes the intersection as "almost entirely obscured," but the dash-cam video and the undisputed testimony show that the westbound traffic was obscured, not the entire intersection. *See Harris County v. Spears*, No. 14-17-00662-CV, 2018 WL 4571841, at \*6 (Tex. App.—Houston [14th Dist.] Sept. 25, 2018, no pet.) (mem. op.) (concluding that evidence of partially obscured visibility of intersection does not raise fact issue with respect to recklessness when combined with other evidence showing precautions officer took before entering intersection); *City of Pasadena v. Kuhn*, 260 S.W.3d 93, 100 (Tex. App.—Houston [1st Dist.] 2008, no pet.) ("Whether the intersection is blind does not create a material fact issue here in light of the undisputed testimony that Officer Matela had on his emergency lights and siren and that he slowed before entering the intersection. Any intersection that an officer attempts to traverse when responding to an emergency is potentially a 'blind intersection.'"). Officer Boehmker testified that as he approached the intersection traveling north on the inside southbound lane, he observed "an SUV at the intersection to my left; so it would have been

---

[2] The Court points to the crash report's conclusion that Officer Boehmker "made faulty evasive action," but this is evidence that he may have acted negligently in entering the intersection; it does not create an issue of fact regarding recklessness. *See Harris County v. Spears*, No. 14-17-00662-CV, 2018 WL 4571841, at \*7 (Tex. App.—Houston [14th Dist.] Sept. 25, 2018, no pet.) (mem. op.) ("The accident review board's reprimand does not create an issue of fact regarding recklessness—rather, the board's conclusion that Deputy Baskins 'failed to exercise due care' is evidence only that Deputy Baskins acted negligently in entering the intersection."); *Quested v. City of Houston*, 440 S.W.3d 275, 286 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (concluding that evidence officer would not have rear-ended plaintiff if officer had been driving more slowly or maintained more distance was not evidence that officer was reckless); *City of Arlington v. Barnes*, No. 02-07-00249-CV, 2008 WL 820385, \*4 (Tex. App.—Fort Worth Mar. 27, 2008, pet. denied) (mem. op.) (holding that written reprimand stating that officer "failed to exercise due care" and failed to comply with section 546.005 "is not evidence raising a fact issue as to whether [officer] acted with reckless disregard for the safety of others because the Review Board determined only that he was negligent").

facing eastbound on Bacon Ranch that had stopped, the vehicles to my right that I was passing that were traveling northbound had stopped, the intersection itself was clear, and [] the vehicles north of me that were traveling southbound towards that intersection had all stopped." He described that the eastbound SUV was stopped even though its light was green and that the southbound cars had stopped before reaching the intersection: "They had stopped because I was approaching the intersection with my lights and sirens, Officer Larson had already gone through that intersection with lights and sirens; so they had stopped for the police vehicles." Finally, he explained that although his view "was substantially blocked by the cars stopped in the northbound lane," he "could see the majority of that intersection" and that "[i]f all of those other vehicles have stopped, the ones coming southbound, this SUV here as well as all of the other vehicles I'm passing on my right had all stopped, it's reasonable for me to assume that they've all stopped because of the cop car with lights and sirens approaching that intersection." *See Martin*, 971 S.W.2d at 432 (noting that civilian drivers have advantage of being able to avoid collisions with emergency vehicles due to those vehicles' sirens, lights, and conspicuous coloring and that emergency responders are "entitled to presume other drivers will respect emergency priorities").[3]

---

[3] Pointing to the police department's policy, the Court states, "Knowing violation of policy can, in some circumstances, rise to the level of recklessness." *Ante* at ___. But "[a] police department's internal policy or procedure is not a 'law' or 'ordinance' for purposes of waiver of immunity pursuant to Texas Civil Practices and Remedies Code section 101.055(2)." *Roche v. City of Austin*, No. 03-17-00727-CV, 2018 WL 3978333, at *2 (Tex. App.— Austin Aug. 21, 2018, no pet.) (mem. op.); *cf. City of Laredo v. Varela*, No. 04-10-00619-CV, 2011 WL 1852439, at *4 (Tex. App.—San Antonio May 11, 2011, pet. denied) (mem. op.) ("[T]he department's policy that officers are required to come to a complete stop at a red light and Officer Cortinas's failure to adhere to the policy does not raise a fact issue on whether Officer Cortinas was consciously indifferent to the safety of others."). Moreover, the cited policy merely requires the pursuing officer to "consider" certain factors in determining whether

Finally, the Court asserts that it must not construe the emergency response exception to render it "meaningless." *Ante* at ___. But copious authorities show circumstances that would lead to immunity being waived for recklessness. For example, the Court's two cited authorities that are purportedly analogous factual authorities demonstrate recklessness. *See Gomez*, 587 S.W.3d at 902 (relying on evidence that officer "chose to (1) look down and away from the road as he approached the intersection and (2) refrain from using his patrol car's siren"); *Kaufman County v. Leggett*, 396 S.W.3d 24, 31 (Tex. App.—Dallas 2012, pet. denied) (noting that evidence showed that officer followed motorcyclist "too closely in an unmarked police vehicle"; that officer conceded that his speed of 107 miles per hour was "unsafe" under circumstances, that his only reason for stopping vehicle was speeding, that he was not in "pursuit," and that he expected motorcyclist to pull over; and that witness testified that officer's speed was "too fast" in relation to his "closeness" of maybe 15 feet such that officer would not be able to stop in time if something happened, but that motorcyclist indicated he was pulling over and his "stop was not abrupt" when he pulled over to shoulder before officer hit loose gravel and collided with motorcycle). But this case is not analogous to those cases. The emergency response exception would not be rendered "meaningless" by concluding that immunity was not waived here although it may be waived in other circumstances; indeed, case law leads to this conclusion.

In sum, the evidence here does not raise a fact question on the issue of whether Officer Boehmker acted with "reckless disregard for the safety of others." *See* Tex. Transp. Code § 546.005; *Varela*, 2011 WL 1852439, at *5 ("[T]he evidence of speeding, the failure to

---

to initiate pursuit, and the Fonsecas dispute how those factors should weigh in making the determination, not whether Officer Boehmker "consider[ed]" them.

comply with the department's policy, and Officer Cortinas's testimony during the deposition do not create a fact issue as to whether his actions were taken with conscious indifference or reckless disregard for the safety of others."). Although there may have been allegations and evidence of ordinary negligence or of momentary judgment lapses, *see Martin*, 971 S.W.2d at 430, there is no evidence that Officer Boehmker acted with reckless disregard for the safety of others and knew the relevant facts but did not care about the result, especially in light of the undisputed evidence of the affirmative acts he took, e.g., using his emergency lights and sirens, using his air horn as he approached the intersection, and slowing from 66 miles per hour to 51 miles per hour until he had visually cleared the partially blocked intersection and all the cars he could see had stopped. Accordingly, I respectfully dissent.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Kelly, and Smith

Filed: December 23, 2021