# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00146-CV

---

**The City of Austin, Appellant**

**v.**

**Noel Powell, Appellee**

---

### FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-19-002316,
### THE HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Noel Powell sued The City of Austin for damages resulting from injuries that Powell sustained in an automobile collision with Austin Police Department (APD) officers Brandon Bender and Michael Bullock. The City filed a plea to the jurisdiction, asserting governmental immunity. The district court denied the plea. We conclude that there is at least a fact issue regarding jurisdiction and will therefore affirm the district court's order.

## BACKGROUND

Powell alleges that on September 17, 2018, he was stopped at a stop sign on Brandt Road in southeast Austin, waiting to turn onto Bluff Springs Road, when two police vehicles, one operated by Officer Brandon Bender and one operated by Officer Michael Bullock, crashed into his vehicle with such force that the collision caused Powell's vehicle to turn 180

degrees. When the collision occurred, Bullock and Bender were in pursuit of a fleeing suspect, with Bullock's vehicle following immediately behind Bender's vehicle.

Bullock and Bender were part of a team of officers who had been dispatched to respond to reports of "shots fired." In a report of the incident submitted to APD, Officer Bender explained that he was responding to a "check welfare urgent call" at 2102 Nogales Trail when he heard "a series of approximately 6 or 7 gunshots . . . just northwest of where [the officers] were located." According to Officer Bullock, there was an FJ Cruiser "near the scene of a call to investigate gunshots fired." When Bullock "instructed the driver of the vehicle to stop, the driver fled at a high speed." Bullock was "called in as back-up to assist in detaining the suspect." Bullock's "job was to catch up to the fleeing vehicle in order to detain the subject and assist officers engaged in a pursuit with the fleeing suspect." Bullock was "driving with [his] lights and sirens activated" and "obtained authorization to catch up to the suspect, who was headed to Slaughter Lane." Bullock described the collision as follows:

> Officer Bender, who was driving ahead of me, turned right onto Brandt Drive from Bluff Springs Drive to close the distance between the suspect and himself. I was unable to slow in time and my vehicle struck Officer Bender's vehicle on the passenger's side, as I swerved to try to avoid colliding [with] his vehicle. My vehicle collided with Officer Bender's vehicle, then with a fence post and stop sign, and slid into the gray minivan [Powell's vehicle].

Bender averred that "a shots fired call is usually, and on the night in question was a Priority 1 call." He explained that "Priority 0 is the highest level call which warrants an emergency police response, while a priority 3 is the lowest priority and does not warrant an emergency response." Bender was one of the initial officers on the scene and "broke from the area to assist in detaining" the fleeing suspect. To catch up to the suspect, Bender "operated

2

Code 3," which means "to operate [the] police unit with emergency lights and siren activated."

In his affidavit, Bender described the collision as follows:

> I decided to make a right turn onto Brandt Drive from Bluff Springs Drive to close the distance. In the process of turning right, Officer Michael Bullock's patrol vehicle struck my vehicle on the passenger's side. I did not see Officer Bullock's vehicle collide with the gray minivan but did realize after exiting my vehicle that [Bullock's] vehicle also collided with the minivan.

In the report of the incident submitted to APD, Bender provided additional information regarding the collision:

> While attempting to make a right hand turn onto Brandt Rd from southbound Bluff Springs Rd . . . I was struck by Officer Bullock's patrol vehicle on the passenger side. I was turned parallel to Bluff Springs again and our units were semi-stuck together. I could see the hood of a Taurus police vehicle [Bullock's vehicle] ahead of mine. I did not see the secondary collision of the Taurus into the silver van at the intersection but remember running over the stop sign and seeing Officer Bullock's vehicle come to a stop against a tree. I estimate my speed at the time of the collision to be around 20 MPH +/-5 MPH.

Another APD officer, Shay Sawyer, came upon the scene of the collision after it occurred and provided a report to APD summarizing her observations at the scene and her interviews with Bender, Bullock, Powell, and Nakrya Thornhill, a passenger in Powell's vehicle. In her report, Sawyer wrote the following:

> I stopped and went to check on the officers who I found to be Officer Bender and Officer Bullock.

> Officer Bullock had blood dripping down the front of his face from an apparent head injury. I checked the area for Officer Bender who was still seated in his patrol vehicle and calling in the crash to dispatch. When I checked on Officer Bender, he advised he was ok.

3

At this time, I observed an additional vehicle that was involved in the crash. I made contact with the driver (Powell) who stated that he was feeling pain on his head and shoulders as a result of the crash. There was also a passenger in the back left seat (Thornhill) who stated that her head hurt as a result of the crash.

I interviewed Powell further about the incident and he stated the following:

Powell was stationary at the stop sign on Brandt Rd / Bluff Springs Dr (facing eastbound) when he observed two police cars driving toward him at a high rate of speed (SB on Bluff Springs). While the police cars were driving towards him, the police car in the back (2nd unit, Officer Bullock) lost control and crashed into his vehicle. It was difficult for Powell to recall specifics about the incident.

Thornhill was unable to recall anything about the crash.

. . . .

I spoke to Officer Bender who stated the following:

Officer Bender was driving a marked APD Patrol Unit # 7964 (SUV) and stated that he was traveling southbound on Bluff Springs Rd. He stated that he decided to make a right-hand turn at Brandt Rd after the pursuit started to head west on Slaughter Ln. from Bluff Springs Rd. Officer Bender stated that there was a Gray / Silver colored van that was facing East at the intersection and was at a complete stop. Officer Bender stated that he slowed down and started making the turn at which time he was struck on the passenger side by the second patrol unit which was being operated by Officer Bullock.

I then spoke to Officer Bullock who stated the following:

Officer Bullock was driving behind Officer Bender in marked APD Patrol Unit # 8766 southbound on Bluff Springs when Officer Bender slowed down to make a right hand turn onto Brandt Dr. Officer Bullock was unable to slow down in time due to Officer Bender slowing down quickly to make the turn. Officer Bullock then stated that he turned his car to the right in an effort to avoid crashing into Officer Bender which was unsuccessful. Officer Bullock stated that he first crashed into Officer Bender's vehicle (side [s]wipe), and then crashed into the front of Powell's van.

4

The Texas Peace Officer's Crash Report, completed by APD, provided the following description and diagram of the collision:

Unit 1 [Bullock] and 2 [Bender] were responding lights and siren southbound on Bluff Springs Rd, Unit 3 [Powell] was stopped at the stop sign waiting to turn onto Bluff Springs Rd from Brandt Rd.

[Bender] stated he slowed to turn westbound on Brandt Rd and was struck on the passenger side, causing him to continue to travel southwest crossing Brandt Rd and striking a fence and stop sign on the southwest corner of the intersection.

[Bullock] stated he was following [Bender] and was unable to slow in time when [Bender] started [his] turn, and [Bullock] struck [Bender] on the passenger side[.] [T]he two units then traveled into the eastbound lane of Brandt Rd striking [Powell], causing [Powell] to spin around facing westbound in the eastbound lane.



The crash report listed Bullock's "driver inattention" and "failure to control speed" as "contributing factors" in the collision.

Powell subsequently sued the two officers involved in the collision and the City for negligence. The City filed a plea to the jurisdiction, asserting that the City was immune from suit under the "emergency exception" to the Texas Tort Claims Act (TTCA).[1]  *See* Tex. Civ. Prac. & Rem. Code § 101.055(2). Following a hearing, the district court denied the plea. This appeal followed.

## STANDARD OF REVIEW

"Governmental units are immune from suit unless immunity is waived by state law." *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528 (Tex. 2022) (citing *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003)). "Because governmental immunity is jurisdictional, it is properly raised through a plea to the jurisdiction, which we review de novo." *Id.* (citing *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007)). "The party suing the governmental unit bears the burden of affirmatively showing waiver of immunity." *Id.* (citing *University of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 512 (Tex. 2019)). "To determine whether the party has met this burden, we may consider the facts alleged by the plaintiff and the evidence submitted by the parties." *Id.*

When a plea to the jurisdiction challenges the existence of jurisdictional facts, as it does here, "we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do." *Texas Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004); *see Bacon v. Texas Hist. Comm'n*, 411 S.W.3d 161, 171 (Tex. App.—Austin 2013, no pet.); *Hendee v. Dewhurst*, 228 S.W.3d 354,

---

[1]  The City also filed a motion to dismiss the individual officers from the suit under the "Election of Remedies" provisions of the TTCA. *See* Tex. Civ. Prac. & Rem. Code § 101.106(a), (e). At the time this appeal was filed, that motion remained pending in the district court.

366–67 (Tex. App.—Austin 2007, pet. denied). If the challenged jurisdictional facts overlap with the merits of the plaintiff's claims, as they do here, "the party asserting the plea to the jurisdiction must overcome a traditional-summary-judgment-like burden and conclusively negate" those facts. *Bacon*, 411 S.W.3d at 171 (citing *Miranda*, 133 S.W.3d at 228; *Hendee*, 228 S.W.3d at 367). "To that end, in evaluating the parties' evidence, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Maspero*, 640 S.W.3d at 528–29 (citing *Miranda*, 133 S.W.3d at 228). "When the pleadings and evidence generate a 'fact question on jurisdiction,' dismissal on a plea to the jurisdiction is improper." *Id*. at 529 (quoting *University of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010)); *see also Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000) (noting that "the proper function of a dilatory plea does not authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on their case simply to establish jurisdiction"). "However, 'if the evidence is undisputed or fails to raise a fact question,' the plea must be granted." *Maspero*, 640 S.W.3d at 529 (quoting *Hayes*, 327 S.W.3d at 116). "Our ultimate inquiry is whether the particular facts presented, as determined by the foregoing review of the pleadings and any evidence, affirmatively demonstrate a claim within the trial court's subject-matter jurisdiction." *Bacon*, 411 S.W.3d at 171.

## DISCUSSION

The TTCA waives immunity for "personal injury . . . proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if the . . . personal injury . . . arises from the operation or use of a motor-driven

vehicle or motor-driven equipment, and the employee would be personally liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code § 101.021(1). However, the TTCA does not apply "to a claim arising from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others." *Id*. § 101.055(2).

"The plaintiff bears the burden of negating Section 101.055's applicability." *Maspero*, 640 S.W.3d at 529 (citing *City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 (Tex. 2006)). To satisfy this burden, the plaintiff must show either that (1) the employee was not responding or reacting to an emergency, or (2) the response or reaction was not in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, the action was taken with conscious indifference or reckless disregard for the safety of others. *See id.*; *Hartman*, 201 S.W.3d at 672.

**Emergency response**

The TTCA does not define the terms "emergency call" or "emergency situation," but Texas courts have interpreted the term "emergency" broadly. *See, e.g.*, *Hartman*, 201 S.W.3d at 672-73 (city's reaction to roadway flooding constituted emergency); *City of San Antonio v. Smith*, 562 S.W.3d 75, 84 (Tex. App.—San Antonio 2018, pet. denied) (city's response to downed light pole blocking roadway was emergency); *Pakdimounivong v. City of Arlington*, 219 S.W.3d 401, 410–11 (Tex. App.—Fort Worth 2006, pet. denied) (suspect's escape from back of patrol car while being transported to jail constituted emergency).

8

Emergencies can include police responses to dangerous situations. *See, e.g.*, *Quested v. City of Houston*, 440 S.W.3d 275, 284–85 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (officer was responding to emergency when he was ordered to immediately "proceed to the scene of an incident involving shots fired by a dangerous armed suspect who had barricaded himself in a house with several hostages"); *Texas Dep't of Pub. Safety v. Little*, 259 S.W.3d 236, 239 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (officer was responding to emergency when he was dispatched to "10-99" call, which "signified that an officer requested assistance with a wanted person"); *see also City of Houston v. Davis*, No. 01–13–00600–CV, 2014 WL 1678907, at *5 (Tex. App.—Houston [1st Dist.] Apr. 24, 2014, pet. denied) (mem. op.) (officer was responding to emergency when he initiated traffic stop on vehicle that had endangered motorists by trying to run another vehicle off road).

In this case, the collision occurred while Officers Bender and Bullock were pursuing a fleeing suspect in response to a "shots fired" call. Bender averred that "a shots fired call is usually, and on the night in question was a Priority 1 call." A Priority 1 call is the second-highest-priority call after Priority 0, which Bender described as "the highest-level call which warrants an emergency police response." To catch up to the suspect, Bender "operated Code 3," which means "to operate [the] police unit with emergency lights and siren activated." Bullock also pursued the suspect with his emergency lights and sirens activated. Additionally, Powell provided no evidence that pursuing a fleeing suspect in response to a "shots fired" call was not an emergency. On this record, there is no fact issue as to whether the officers were responding to an emergency at the time of the collision.[2] *See Quested*, 440 S.W.3d at 284–85.

---

[2] At the hearing on the plea to the jurisdiction, Powell did not contest that the officers were responding to an emergency. However, in a footnote in his brief, Powell asserts that

**Applicable laws and ordinances / recklessness**

Because there is no fact issue as to whether the officers were responding to an emergency, Powell must show that there is a fact issue as to whether the response was not in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, the action was taken with conscious indifference or reckless disregard for the safety of others.[3]  On this record, we conclude that he has.

The Transportation Code permits operators of authorized emergency vehicles to disregard certain rules of the road, such as speed limits, under certain circumstances, including when responding to an emergency call or pursuing a fleeing suspect.  *See* Tex. Transp. Code §§ 546.001–.004.  However, the Transportation Code "does not relieve the operator of an authorized emergency vehicle from the duty to operate the vehicle with appropriate regard for the safety of all persons or the consequences of reckless disregard for the safety of others."  *Id.* § 546.005.  The Transportation Code "imposes a *duty* to drive with due regard for others by avoiding negligent behavior," but "it only imposes *liability* for reckless conduct."  *City of*

---

"[t]here is a fact question as to the timing of the termination of the high-speed pursuit" and that "[i]t is possible that the pursuit was terminated before Officer Bullock collided with Mr. Powell." However, even if other officers had ended the pursuit before the collision occurred, Powell presented no evidence that either Bender or Bullock were made aware of that fact prior to the collision.  *See Texas Dep't of Pub. Safety v. Little*, 259 S.W.3d 236, 239 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (explaining that officer's knowledge of situation at time of collision determines if officer is responding to emergency).

[3]  The Texas Supreme Court has recently explained that "[b]ased on the structure and language of the pertinent statutory provisions governing emergency response, the distinction between these inquiries largely collapses" into one inquiry concerning recklessness.  *City of San Antonio v. Maspero*, 640 S.W.3d 523, 529 (Tex. 2022).  This is because the laws applicable to emergency action involving emergency vehicles, including Transportation Code section 546.005 in this case, "do[] not relieve the operator of an authorized emergency vehicle from the duty to operate the vehicle with appropriate regard for the safety of all persons or the consequences of reckless disregard for the safety of others."  Tex. Transp. Code § 546.005.

*Amarillo v. Martin*, 971 S.W.2d 426, 431 (Tex. 1998). In other words, the Transportation Code does not waive immunity for "mere negligence." *Id*. at 430. A showing of recklessness is required. *Id*.

"Under the Transportation Code, reckless driving consists of driving a vehicle in 'willful or wanton disregard for the safety of persons or property.'" *Maspero*, 640 S.W.3d at 531 (quoting Tex. Transp. Code § 545.401(a)). "[T]his standard requires 'conscious indifference,' or 'subjective awareness of an extreme risk.'" *Id*. (quoting *Tarrant Cnty. v. Bonner*, 574 S.W.3d 893, 902 (Tex. 2019)). "Further, recklessness reflects more than a 'momentary judgment lapse' and instead 'requires a showing that the driver committed an act he knew or should have known posed a high degree of risk of serious injury.'" *Id*. (quoting *Perez v. Webb Cnty.*, 511 S.W.3d 233, 236 (Tex. App.—San Antonio 2015, pet. denied)). However, "proof of evil or malicious intent" is not required. *City of San Antonio v. Schneider*, 787 S.W.2d 459, 465 (Tex. App.—San Antonio 1990, writ denied) (quoting *White v. State*, 647 S.W.2d 751, 753 (Tex. App.—Fort Worth 1983, pet. ref'd)). The plaintiff must prove instead that the driver "knew the relevant facts but did not care about the result." *Hartman*, 201 S.W.3d at 672 n.19.

Whether an officer drove recklessly may be inferred from the totality of facts and circumstances surrounding the collision. *See, e.g.*, *Gomez v. City of Houston*, 587 S.W.3d 891, 902–03 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (concluding that there was fact issue as to recklessness when officer failed to slow his speed to compensate for wet conditions, might not have used his emergency lights and siren, and applied his brakes as he approached intersection but was unable to stop his patrol car before entering intersection, where his car slid into path of another vehicle); *Perez*, 511 S.W.3d at 237–38 (determining that there was fact issue as to recklessness when officer ran through red light at intersection, started to brake before

11

entering intersection but then accelerated through it, and entered intersection even though he had blind spot that blocked his view of oncoming traffic); *Texas Dep't of Pub. Safety v. Bonilla*, 481 S.W.3d 646, 654–55 (Tex. App.—El Paso 2014) (deciding that there was fact issue as to recklessness when circumstances included officer driving at unsafe speed, failing to remove foot from accelerator until .5 seconds before impact, and not being "fully aware of his surroundings"), *rev'd on other grounds*, 481 S.W.3d 640 (Tex. 2015); *Kaufman Cnty. v. Legget*, 396 S.W.3d 24, 31–32 (Tex. App.—Dallas 2012, pet. denied) (concluding that there was fact issue as to recklessness when circumstances included that officer's speed was "'too fast' in relation to his 'closeness' to" motorcycle in front of him, that motorcycle in front of officer did not stop "abruptly" so as to cause collision, that officer was "unable to control his speed before he hit" motorcycle, and that officer's vehicle skidded onto shoulder of road as he tried to stop); *see also City of Killeen v. Terry*, No. 03-20-00071-CV, 2022 WL 221240, at *3–4 (Tex. App.— Austin Jan. 26, 2022, pet. filed) (mem. op.) (concluding that there was fact issue as to recklessness when circumstances included officer driving through intersection against red light at excessive rate of speed, with other traffic present, and city review board investigation finding that "collision was preventable"); *City of Killeen Police Dep't v. Fonseca*, No. 03-19-00898-CV, 2021 WL 6105569, at *4-5 (Tex. App.—Austin Dec. 23, 2021, pet. filed) (mem. op.) (concluding that there was fact issue as to recklessness when circumstances included that officer was traveling above speed limit on wet roads with heavy traffic and police department investigation finding that officer "had executed a 'faulty evasive action' that led to the collision and that the collision could have been prevented"); *City of San Antonio v. Torres*, No. 04-17-00309–CV, 2017 WL 5472537, at *4 (Tex. App.—San Antonio Nov. 15, 2017, no pet.) (mem. op.) (listing facts and circumstances that courts consider in analysis of whether

there is fact issue as to recklessness, including speed limit and speed officer was driving, whether officer used lights and sirens, appearance of and traffic control signs at intersection, amount of oncoming traffic and degree to which officer could see it, whether and where officer looked for traffic, and whether and when he slowed before entering intersection).

The facts and circumstances of the collision in this case are as follows. Officers Bender and Bullock were driving southbound on Bluff Springs Road, pursuing a suspect. Bullock, who was following behind Bender, described his role in the pursuit as "to catch up to the fleeing vehicle in order to detain the subject and assist officers engaged in a pursuit with the fleeing suspect." As Bender and Bullock approached the intersection of Bluff Springs Road and Brandt Road, Powell was at the intersection, stationary at a stop sign on Brandt Road, in the eastbound lane of traffic. It appears that there was a clear line of sight between the police vehicles and Powell's vehicle, as Bender could see Powell's vehicle stopped at the stop sign, and Powell could see the two police cars driving toward him at "a high rate of speed." Powell recalled that the second vehicle, operated by Bullock, "lost control" and crashed into his vehicle.

Before crashing into Powell's vehicle, Bullock collided with Bender's vehicle, which was slowing down to turn right onto Brandt Road. Bender estimated that his speed at the time of the collision was "around 20 mph +/- 5 mph." Bullock, by his own admission, "was unable to slow in time" in response to Bender slowing his vehicle, and Bullock "struck Officer Bender's vehicle on the passenger's side, as [he] swerved to try to avoid colliding [with] his vehicle." This evasive action was unsuccessful, as Bullock "collided with Officer Bender's vehicle, then with a fence post and stop sign, and slid into" the front of Powell's vehicle.

Bender recalled that after being struck, he was "turned parallel to Bluff Springs again" and that his unit and Bullock's unit "were semi-stuck together." According to the crash

13

report, the collision caused the two police units to "travel[] into the eastbound lane of Brandt Rd striking" Powell's vehicle, which caused that vehicle to turn 180 degrees, i.e., "to spin around facing westbound in the eastbound lane." Following the collision, Powell, Bender, and Bullock were all transported to the hospital via EMS. The crash report listed Bullock's "driver inattention" and "failure to control speed" as "contributing factors" in the collision.

Transportation Code Section 545.062 requires a driver who is following another vehicle to "maintain an assured clear distance between the two vehicles so that, considering the speed of the vehicles, traffic, and the conditions of the highway, the operator can safely stop without colliding with the preceding vehicle or veering into another vehicle, object, or person on or near the highway." Tex. Transp. Code § 545.062(a). This provision contains no exception for emergency vehicles such as police cars.[4] Thus, Bullock was required to comply with that statute during the pursuit. The manner in which the collision occurred, with Bullock striking the passenger side of Bender's vehicle as it was turning right and then colliding with Powell's vehicle, causing Powell's vehicle to turn in the opposite direction, is some evidence that Bullock was failing to maintain a safe following distance behind Bender, thereby violating Transportation Code section 545.062(a). At this stage of the proceedings, we cannot know if Bullock's actions

---

[4] In fact, APD pursuit procedures include similar requirements. *See Austin, Tex., Austin Police Department General Orders, Vehicle Pursuits* § 214.3.4(a) (Sep. 10, 2018) ("Officers will space themselves from other involved vehicles, in consideration of their driving skills and vehicle performance capabilities, so they are able to see and avoid hazards or react safely to maneuvers by the fleeing vehicle and other police units."); *see also id.* § 214.5.2(b) ("The secondary unit should remain at a safe distance behind the primary unit unless directed to assume the role of primary unit."). However, to the extent Powell argues that the officers' actions violated APD policies and procedures applicable to emergency action, the Texas Supreme Court has recently held that "a police department's internal policies, in and of themselves, are not 'laws' or 'ordinances'" and that noncompliance with such policies "does not by itself amount to a violation of 'laws and ordinances applicable to emergency action.'" *Maspero*, 640 S.W.3d at 530 (quoting Tex. Civ. Prac. & Rem. Code 101.055(2)).

14

rose to the level of recklessness or were merely negligent, but considering the totality of the circumstances summarized above, there is at least a fact issue as to whether his actions were reckless.

Officer Bullock knew that he was engaged in a high-speed pursuit with a suspect, and he knew that he was following directly behind another police vehicle engaged in that same pursuit. From this evidence, it could be reasonably inferred that Bullock knew or should have known that during the pursuit, the lead vehicle in front of him might need to suddenly change directions, reduce its speed, or engage in other emergency maneuvers and that such maneuvers might require Bullock to react quickly to avoid colliding with the lead vehicle or other surrounding traffic. Despite this knowledge, there is evidence in the record that Bullock was inattentive, failed to control his speed, and failed to maintain a safe following distance, resulting in a serious collision with Bender's vehicle and Powell's vehicle. Taking as true all evidence favorable to Powell and indulging every reasonable inference and resolving any doubts in his favor, we conclude that the evidence raises at least a fact issue as to whether Bullock "knew or should have known" that his actions during the pursuit "posed a high degree of risk of serious injury" and were thus reckless. *See Gomez*, 587 S.W.3d at 902–03; *Legget*, 396 S.W.3d at 31-32; *see also Terry*, 2022 WL 221240, at *3–4; *Fonseca*, 2021 WL 6105569, at *4–5. Accordingly, the district court did not err in denying the plea to the jurisdiction.

**CONCLUSION**

We affirm the district court's order.

_____

Gisela D. Triana, Justice

15

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed:   May 13, 2022